**David Walter HUGHES, Appellant,**

**v.**

**The STATE of Texas.**

No. 628–98.

Court of Criminal Appeals of Texas.

June 16, 1999.

Ralph H. Walton, Jr., Granbury, for appellant.

Richard L. Hattox, DA, Granbury, Matthew Paul, State's Atty., Austin, for the State.

*O P I N I O N*

HOLLAND, J., delivered the opinion of the Court, in which MEYERS, MANSFIELD, PRICE, WOMACK, KEASLER, and JOHNSON JJ., joined.

▮ David Walter Hughes was convicted of indecency with a child by contact. TEX. PENAL CODE § 21.11. The jury assessed punishment at fifteen years confinement and a $5,000 fine. The Second Court of Appeals affirmed the conviction in an unpublished opinion. *Hughes v. State*, No.

2-97-425-CR (Tex.App.—Fort Worth March 12, 1998) (not designated for publication). We granted discretionary review to determine whether the Court of Appeals erred in determining the State properly impeached its own witness under Rule 607.[1]

## I. Factual Background

While investigating a 911 call to the residence of K.P., Officer Russell Ford was approached by K.P.'s two daughters, nine-year-old "Jessica Ives"[2] and six-year-old J.M. After speaking with Jessica, Officer Ford notified Child Protective Services (C.P.S.) of possible sexual abuse by appellant, Jessica's step-father. The next day Susan Curlee, a C.P.S. case worker, conducted a videotaped interview with Jessica. After the interview Curlee and another C.P.S. caseworker, Marleigh Meisner, met with K.P. Appellant was subsequently indicted for indecency with a child.

At a pre-trial hearing concerning Jessica's outcry, she testified the first person she told about appellant's abuse was her mother, K.P. Jessica testified she told K.P. on several occasions that appellant was "coming in [her] room and touching [her] where he wasn't suppose[d] to." Following Jessica's testimony, the State called K.P. to the stand. K.P. had charges pending against her for the offense of failure to report the abuse. The State stated it was willing to give K.P. use immunity for her testimony in the present case. The trial court agreed.

The State asked K.P. a series of questions concerning statements she made to Curlee and Meisner in the CPS interview. Specifically, the State asked K.P. if she told Curlee and Meisner that Jessica had

---

1. Effective March 1, 1998, the Texas Rules of Criminal Evidence and Texas Rules of Civil Evidence were merged to form the Texas Rules of Evidence. The Rules of Evidence referred to in this opinion are substantially the same as their predecessors in the Rules of Criminal Evidence. Hence, the scope and application of the new rules would be the

same as the old ones. Nevertheless, because this case was tried before the effective date of the new rules, we will apply the former Texas Rules of Criminal Evidence.

2. "Jessica Ives" was the pseudonym used for the complainant at trial.

reported the abuse to her. The State also asked if K.P. told them that she confronted appellant with Jessica's allegations and he admitted they were true. K.P. admitted to meeting with Curlee and Meisner, but denied making the statements.

The State called Curlee to testify. Curlee testified that K.P. made the statements she denied in her testimony. Curlee testified that K.P. not only stated in the C.P.S. interview that Jessica had reported the abuse to her but that appellant had confessed when she confronted him with Jessica's allegations. Specifically, Curlee testified that K.P. told both her and Meisner that appellant admitted the allegations were true, stated he couldn't explain why he was abusing Jessica, and promised K.P. that he would stop.

At appellant's trial, the State called K.P. to testify. The State again asked K.P. if she told Curlee and Meisner that appellant had confessed to sexually abusing Jessica when she confronted him. K.P. again admitted to meeting with Curlee and Meisner but denied making any statements inculpating appellant.

The State then called Curlee and Meisner to impeach K.P.'s testimony. Defense counsel objected on the basis that their testimony was improper impeachment, was intended to elicit inadmissible hearsay, and was violative of Rule 403. The trial court overruled these objections and allowed the testimony on the ground that it was offered for purposes of impeaching K.P.'s testimony.

As in the pretrial hearing, Curlee testified that K.P. told her in the interview that appellant had admitted to abusing Jessica. Curlee also testified that K.P. stated appellant told her that he did not know why he had abused Jessica but that he would not do it again. Curlee further testified that K.P. stated she had put a lock on Jessica's door to prevent appellant from continuing to abuse her. Meisner testified that she was present when Curlee interviewed K.P. and affirmed Curlee's testimony relating to the interview.

On appeal, appellant argued the State called K.P. for the sole purpose of impeaching her with otherwise inadmissible hearsay evidence. The State responded that the impeachment evidence was admissible as substantive evidence under article 38.072 of the Texas Code of Criminal Procedure and rules 801 and 803 of the Texas Rules of Criminal Evidence.

Without addressing either contention, the Second Court of Appeals held the testimony was proper impeachment evidence under Rule 607 of the Texas Rules of Criminal Evidence. *Hughes,* slip op. at 8. The Court of Appeals observed that "[u]nless a witness' prior inconsistent statement falls within a hearsay exception, it is admissible only for purposes of impeachment and not as substantive evidence." Relying on *Miranda v. State,* 813 S.W.2d 724, 735 (Tex.App.—San Antonio 1991, pet. ref'd), the Court of Appeals held the jury was presumed to have followed the trial court's instruction that the testimony regarding K.P.'s prior inconsistent statements could only be used to determine her credibility and not to determine Hughes' guilt. *Hughes,* op. at 6.

Appellant maintains that the State's right to impeach its own witness under Rule 607 "does not extend to employment of such impeachment as a mere subterfuge to get otherwise inadmissible hearsay evidence before the jury." *Pruitt v. State,* 770 S.W.2d 909, 911 (Tex.App.—Fort Worth 1989, pet. ref'd); *United States v. Johnson,* 802 F.2d 1459, 1466 (D.C.Cir. 1986). Appellant contends the State's sole purpose in calling K.P. was to impeach her and, thus, get before the jury appellant's alleged admissions of guilt which were otherwise inadmissible.

The State claims it called K.P. to testify to Jessica's outcry which the evidence was admissible under article 38.072 of the Texas Code of Criminal Procedure because appellant "made no objection to any other predicate required and has made no assertion nor has argued any evidence that

would have made the child's statements to [K.P.] inadmissible." Tex.Code Crim. Proc. art. 38.072.[3] The State also claims it called K.P. to testify to appellant's admission of guilt which was admissible under rules 801 and 803 of the Texas Rules of Criminal Evidence. Tex.R.Crim. Evid. 801 and 803. Hence, the State contends because K.P. denied both Jessica's outcry and appellant's admission of guilt it was permissible to attack her credibility with prior inconsistent statements.

## II. Rule 607

Although a few courts of appeals have addressed this issue, this Court has yet to resolve the issue squarely.[4] In *Barley v. State*, 906 S.W.2d 27 (Tex.Crim.App.1995), the defendant claimed a witness for the State was called for the sole purpose of impeaching him to place before the jury substantive evidence which was otherwise inadmissible. Because the defendant's objection to the introduction of the impeachment evidence at trial did not comport with his complaint on appeal, this Court concluded the defendant failed to preserve error. *Barley*, 906 S.W.2d at 36. In a footnote, however, this Court suggested

how the issue should be resolved. Specifically, this Court observed that although a showing of "surprise" or "injury" was no longer required for a party to impeach its own witness under Rule 607, there did appear to be a growing distinction among the courts as to whether the State was aware its witness would testify unfavorably. *Id.* at 38 n. 11. Specifically, this Court observed that in those cases where courts refused to admit prior inconsistent statements under the guise of impeachment, it was obvious the State's primary intent in calling the witness was to introduce inadmissible hearsay. *Barley*, 906 S.W.2d at 38 n. 11 (citing *United States v. Hogan*, 763 F.2d at 702 and *Pruitt v. State*, 770 S.W.2d at 911). In cases similar to *Barley*, however, where there was no clear showing that the State was aware the witness would testify unfavorably, the trend seemed to be "an analysis conducted in the context of a Rule 403 balancing approach." *Barley*, 906 S.W.2d at 38 n. 11.

■ Some of the courts of appeals have interpreted the footnote in *Barley* as creating an exception to Rule 607 where the State is, or should be, aware that its witness will testify unfavorably.[5] An ex-

---

**3.** Article 38.072 provides for the admissibility of hearsay testimony of a child abuse victim, age twelve years or younger, if it was the first statement made about the abuse by the child to a person 18 years of age or older and, on or before the 14th day before the date the proceeding began. Tex.Code Crim. Pro. art. 38.072; *Long v. State*, 800 S.W.2d 545, 547 (Tex.Crim.App.1990).

**4.** *See e.g, Braggs v. State*, 951 S.W.2d 877 (Tex.App.—Texarkana 1997, pet. ref'd); *Zule v. State*, 802 S.W.2d 28 (Tex.App.—Corpus Christi 1990, pet. ref'd); *Pruitt v. State*, 770 S.W.2d 909 (Tex.App.—Fort Worth 1989, pet. ref'd); *Miranda v. State*, 813 S.W.2d 724 (Tex. App.—San Antonio 1991, pet. ref'd). A number of United States Courts of Appeals have addressed this same question in connection with Federal Rule 607 which serves as the pattern for our state rule. These courts have unanimously held that "impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible." *Whitehurst v. Wright*, 592 F.2d

834, 839 (5th Cir.1979) (quoting *United States v. Morlang*, 531 F.2d 183, 190 (4th Cir. 1975)); *United States v. Johnson*, 802 F.2d 1459, 1466 (D.C.Cir.1986); *Accord United States v. Peterman*, 841 F.2d 1474, 1479 (10th Cir.1988), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 783, 102 L.Ed.2d 774 (1989); *United States v. Frappier*, 807 F.2d 257, 259 (1st Cir.1986), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1629, 95 L.Ed.2d 203 (1987); *United States v. Sebetich*, 776 F.2d 412, 429 (3rd Cir.1985); *United States v. Crouch*, 731 F.2d 621, 624 (9th Cir.1984), *cert. denied*, 469 U.S. 1105, 105 S.Ct. 778, 83 L.Ed.2d 773 (1985); *United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir.1984); *United States v. Fay*, 668 F.2d 375, 379 (8th Cir.1981); *United States v. Miller*, 664 F.2d 94, 97 (5th Cir.1981); *cert. denied*, 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982); *United States v. DeLillo*, 620 F.2d 939, 946 (2d Cir.), *cert. denied*, 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980).

**5.** *See Braggs v. State*, 951 S.W.2d 877, 883 (Tex.App.—Texarkana 1997, pet. ref'd).

amination of this evidentiary rule, however, reveals no such exception. Rule 607 permits the credibility of a witness to be attacked by any party, including the party calling the witness. Tex.R.Crim. Evid. 607. The rule abandons the traditional "voucher" rule which prohibited a party from impeaching its own witness.[6] The plain language of Rule 607 also dispenses with the surprise and injury exception to the "voucher" rule which served as a prerequisite to impeaching one's own witness.[7] Because grafting a surprise requirement would contravene the plain language of Rule 607, we decline to adopt this common-law distinction.[8] Instead, we conclude the State's knowledge that its own witness will testify unfavorably is a factor the trial court must consider when determining whether the evidence is admissible

under Rule 403. Analyzing lack of surprise or injury in terms of Rule 403 is preferable not only because it comports with the plain language of Rule 607, but because it will lead to the conclusion that a trial court abuses its discretion under Rule 403 when it allows the State to admit impeachment evidence for the primary purpose of placing evidence before the jury that was otherwise inadmissible.[9] The impeachment evidence must be excluded under Rule 403's balancing test because the State profits from the witness' testimony only if the jury misuses the evidence by considering it for its truth. Consequently, any probative value the impeachment testimony may have is substantially outweighed by its prejudicial effect. With this in mind, we now turn to the

6. Rule 607 eliminated the policy behind the voucher rule that a party "vouched" for its witnesses. *See Russeau v. State*, 785 S.W.2d 387, 390 (Tex.Crim.App.1990) (quoting Advisory Committee's Note to Federal Rule 607: "The traditional rule against impeaching one's own witness is abandoned as based on false premises. A party does not hold out his witness (sic) as worthy of belief, since he rarely has a free choice in selecting them."); *see also Chambers v. Mississippi*, 410 U.S. 284, 296, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) ("Whatever validity the 'voucher rule' may once have enjoyed and apart from whatever usefulness it retains today in the civil trial process, it bears little present relationship to the realities of the criminal process.").

7. As an exception to the "voucher" rule, a party was permitted to impeach its own witness when surprised and injured by the witness' testimony. *See* Act of June 18, 1966, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws 317, 470, codified as Vernons's Ann. Code.Crim. Proc. Art. 38.28 (repealed effective Sept. 1, 1986). *See e.g., Goodman v. State*, 665 S.W.2d 788 (Tex.Crim.App.1984); *Puckett v. State*, 640 S.W.2d 284 (Tex.Crim. App.1982). The surprise requirement was introduced into the Code of Criminal Procedure provision which permitted impeachment of one's own witness when that witness' testimony injured the calling party. *Pelton v. State*, 167 Tex.Crim. 649, 322 S.W.2d 529 (1959). The exception prevented parties from calling witnesses who they knew would testify unfavorably for the sole purpose of getting the witness' prior inconsistent statement before

the jury. *See e.g., Lewis v. State*, 593 S.W.2d 704, 706 (Tex.Crim.App.1980).

8. Although the reasoning varies, almost all the federal courts have refused to graft a rigid surprise requirement before a party can impeach its own witness. *See e.g., United States v. Hogan*, 763 F.2d 697, 702 (5th Cir.1985), *modified on other grounds*, 771 F.2d 82 (5th Cir.1985), *aff'd in part, rev'd in part*, 779 F.2d 296 (5th Cir.1986); *Webster, supra*, at 1193 (7th Cir.1984); *DeLillo, supra*, at 946–47.

9. *See Miranda v. State*, 813 S.W.2d 724 (Tex. App.—San Antonio 1991, pet. ref'd) (quoting *Whitehurst v. Wright*, 592 F.2d 834, 839 (5th Cir.1979) for proposition that application of Rule 403's balancing test would require that "impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible").

In her dissenting opinion, Judge Keller suggests Rule 403 is inapplicable because the State failed to elicit substantive evidence from K.P. and, thus, could not impeach her under Rule 607. *Slip op.* at n. 1. The plain language of Rule 607 provides "[t]he credibility of a *witness* may be attacked by any party, including the party calling the witness." Tex. R.Crim. Evid. 607 (emphasis added). Rather than graft the predicate suggested by Judge Keller onto Rule 607, we find the preferable approach for examining this issue to be Rule 403's balancing test because it both comports with the plain language of Rule 607 and leads to a conclusion that admitting evidence under the guise of impeachment is impermissible.

instant case to determine whether the trial court erred in failing to exclude the impeachment testimony under Rule 403's balancing test.

## III. Rule 403

Appellant claims the Court of Appeals erred in failing to hold the trial court abused its discretion under Rule 403 when it permitted the State to admit K.P.'s prior inconsistent statements for purposes of impeachment. Specifically, appellant contends because the State knew in advance that K.P. would deny having told Curlee and Meisner that appellant confessed to committing the offense alleged, the State's sole purpose for calling K.P. as a witness was to get appellant's confession before the jury.

The State contends even if its primary purpose in calling K.P. was to impeach her with prior inconsistent statements, the trial court did not abuse its discretion under Rule 403 because had K.P. testified to these matters the jury could consider the evidence as substantive proof of appellant's guilt. We disagree.

■ Relying on Rule 803, the State claims K.P.'s testimony regarding appellant's confession was admissible as a statement against interest. *See* TEX.R.CRIM. EVID. 803(24). A statement against interest is admissible as an exception to the hearsay rule, if at the time of its making, the statement tended to subject the declarant to criminal liability such that a reasonable person would not have made the statement unless she believed it to be true and there are corroborating circumstances.

TEX.R.CRIM. EVID. 803(24); *Burks v. State*, 876 S.W.2d 877, 904–05 (Tex.Crim.App. 1994). Though the State is correct that K.P.'s testimony relating to appellant's confession qualified as a statement against interest, any statements K.P. may have made to Curlee and Meisner concerning appellant's confession do not fall within the parameters of Rule 803(24) because Curlee and Meisner do not have firsthand knowledge of the confession.

■ The State also claims that K.P.'s testimony concerning appellant's confession was admissible under Rule 801(e)(2) as an admission by party opponent. A statement qualifies as an admission by party opponent if it is offered against a party and it is the party's own statement. TEX.R.CRIM. EVID. 801(e)(2). Unlike declarations against interest, this nonhearsay exception neither requires the statement be against the party's interest nor corroborated. Like declarations against interest, however, the witness testifying to the party admission must have firsthand knowledge of the party's admission; otherwise any testimony regarding the admission is hearsay. TEX.R.CRIM. EVID. 801(e)(2) (now TEX.R. EVID. 801(e)(2)). Consequently, because Curlee and Meisner did not have first hand knowledge of appellant's confession the evidence was inadmissible for substantive consideration under this evidentiary rule.[10]

## IV. Conclusion

■ The State claims its reasons for calling K.P. to testify were legitimate be-

---

10. In her dissenting opinion, Judge Keller contends although the State could not proffer K.P.'s statements to Curlee and Meisner under the theory of impeachment, the trial court did not err in admitting the evidence because it was admissible under the statement against interest exception to the hearsay rule. Op. at 3. That is, Judge Keller insists Curlee and Meisner could testify regarding K.P.'s statements because they "tended to subject her to liability for failing to report child abuse, a Class B misdemeanor." *Id.*

Although any statements K.P. may have made to Curlee and Meisner concerning the fact that she was aware that Jessica had been sexually abused but failed to report the abuse to authorities qualify as statements against interest, her statements regarding appellant's alleged admission of guilt do not. Instead, these statements are against *appellant's* interest. Consequently, Curlee and Meisner's testimony regarding K.P.'s statements to them that appellant had allegedly admitted his guilt to her is inadmissible hearsay. *See* TEX. R.CRIM. EVID. 801(e)(2) and 803(24).

cause it wanted to elicit evidence relating to Jessica's outcry and appellant's confession. While these maybe legitimate reasons for calling K.P. to testify at appellant's trial, the State fails to offer this Court any explanation for why it expected K.P. to testify differently than she had at the pretrial hearing. More importantly, however, an examination of the record reveals the State elicited no favorable testimony from K.P. The lack of favorable testimony suggests the State was attempting to use K.P. prior inconsistent statements under the guise of impeachment for the primary purpose of placing before the jury evidence which was not otherwise admissible. Consequently, we conclude the State had little, if any, legitimate purpose in admitting K.P.'s prior inconsistent statements to impeach her testimony. Due to the highly prejudicial nature of this evidence we conclude any probative value it may have had was substantially outweighed by its prejudicial effect.

We hold the Court of Appeals erred in failing to find the trial court abused its discretion under Rule 403 when it permitted the State to admit evidence of K.P.'s prior inconsistent statements to impeach her testimony. Having determined the trial court erred in failing to exclude the impeachment evidence under Rule 403, this cause is remanded to the Court of Appeals for it to conduct a harm analysis in the first instance.

The judgment of the Court of Appeals is reversed, and the cause remanded for proceedings consistent with this opinion.

KELLER, J., delivered a dissenting opinion.

McCORMICK, P.J., dissented without an opinion.

1. But I would so hold for different reasons than those announced by the majority. A witness' mere denial that she heard another person make an incriminating statement does

KELLER, J., filed this dissenting opinion.

Although the statements at issue here were admitted on an impeachment theory, an appellate court must uphold a trial court's ruling on any theory of law applicable to the case. *Jones v. State,* 982 S.W.2d 386, 389 (Tex.Crim.App.1998); *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990). If the statements were admissible under a hearsay exception, then the trial court's decision to admit the evidence would be correct, albeit on a different theory of law than contemplated by the trial court. The Court of Appeals found that the evidence constituted proper impeachment, however, and never reached the issue of whether the evidence was admissible under a hearsay exception. The majority finds that the Court of Appeals erred in holding the evidence admissible as impeachment, and further finds that no hearsay exception applies. As a result, the majority concludes that it was error to admit the evidence. The majority remands the case for a harm analysis. While I agree that the statements at issue in the present case were not admissible under an impeachment theory,[1] I find that there is indeed an applicable hearsay exception.

The statements at issue in the present case are "out of court" on two levels:

1. They constitute appellant's statements to his wife, and
2. They constitute appellant's wife's statements to the social workers.

The statements do not technically fall within the "hearsay within hearsay" rule because appellant's statements are party-opponent admissions, which are defined as "not hearsay." Rule 801(e)(2)(A). Nevertheless, the problem is analytically the same as a hearsay within hearsay problem. Regarding "hearsay within hearsay" the rules provide:

not, on its own, constitute substantive evidence (having no tendency to prove a fact of consequence), and hence, cannot supply a predicate for impeachment.

Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.

Rule 805.[2] The testimony of the social worker must be justified on two levels: (1) as to appellant's statements, and (2) as to the wife's statements.

Because appellant's statements to his wife are clearly party-opponent admissions, which are defined as not hearsay under the rules, the first level may be easily dispensed with. The applicable rule provides: "A statement is not hearsay if . . . [t]he statement is offered against a party and is his own statement." Rule 801(e)(2)(A). Had appellant's wife testified in court about appellant's statements, those statements would have been admissible as party-opponent admissions.

The next question is whether the social worker could testify about the wife's out of court statements. The wife's statements fall within a hearsay exception—statements against interest. The rules provide that statements that tend to subject the declarant to criminal liability are admissible so long as corroborating circumstances clearly indicate the trustworthiness of the statements:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, or to make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances

clearly indicate the trustworthiness of the statement.

Rule 803(24). In the present case, the wife's statements tended to subject her to liability for failing to report child abuse, a Class B misdemeanor. See Texas Family Code § 261.109.[3] The wife's statements indicated that appellant's abuse of the child had been continuing and that the abuse occurred multiple times after appellant promised his wife that he would stop. By acknowledging that she had been aware of continuing abuse, she subjected herself to liability for not reporting that abuse. And in fact, appellant's wife was charged with that offense at the time the trial court gave her "use immunity" in exchange for her testimony at appellant's trial. The majority contends that, while general statements by the wife to social workers concerning her knowledge of abuse qualify as statements against interest, her statements regarding appellant's admissions of guilt do not. However, the fact that appellant confessed his guilt to his wife shows his wife's knowledge of the abuse (because he confessed it to her), and that knowledge is incriminating because she failed to report what she had learned.

The record also shows corroborating circumstances. The social worker testified that the wife was not in custody and that her statements were voluntarily given. Moreover, the social worker had previously interviewed the children, and the wife's testimony was consistent with the children's allegations. See Green v. State, 840 S.W.2d 394, 412 (Tex.Crim.App.1992), cert. denied, 507 U.S. 1020, 113 S.Ct. 1819, 123 L.Ed.2d 449(1993)(other witnesses identified the defendant at the time of the murder and only defendant's fingerprints were on the murder weapon).

That the trial court subsequently granted the wife immunity does not alter the

---

**2.** All references to rules are to the Texas Rules of Criminal Evidence in effect at the time of trial unless otherwise specified.

**3.** The offense provides: "A person commits an offense if the person has cause to believe

that a child's physical or mental health or welfare has been or may be adversely affected by abuse or neglect and knowingly fails to report as provided in this chapter." Texas Family Code § 261.109(a).

above analysis. The wife's statements, *at the time they were made,* subjected her to criminal liability.

I would affirm the judgment of the Court of Appeals. I respectfully dissent.