Opinion issued March 11, 2004
 








     



In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01004-CR




JOSE ANGEL SALTO, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 23rd District Court
Brazoria County, Texas
Trial Court Cause No. 41,120




MEMORANDUM OPINION

          A jury found appellant, Jose Angel Salto, guilty of murder and, after finding
true the allegation in an enhancement paragraph that appellant had a prior felony
conviction, assessed punishment at confinement for life and a $10,000 fine. In four
points of error, appellant contends that (1) his federal constitutional rights to
compulsory process


 and to due process of law


 were violated when the State, prior
to trial, authorized the deportation of an exculpatory witness; (2) the trial court erred
in admitting into evidence specific impeachment testimony that was presented by the
State as a subterfuge to avoid the hearsay rule; and (3) the trial court erred in
admitting into evidence specific expert testimony offered by the State to bolster the
out-of-court statements made by another witness, because those statements were
admitted for impeachment only, and, thus, were not relevant to the purpose for which
the statements were made. We affirm.
Background
          On July 1, 2001, the body of Jaime Rodriguez, the complainant, was discovered
in Pearland. An investigation by the Pearland Police Department ensued, culminating
with the arrest of appellant and his co-defendant, Fernando Cano. On August 22,
2001, appellant was indicted on the charge of murder with a deadly weapon.
Deportation of Exculpatory Witness

          In his first two points of error, appellant contends that his federal constitutional
rights to compulsory process and to due process of law were violated when the State
authorized the deportation of an exculpatory witness, Carlos Romero. 
          On October 16, 2001, Pearland Police Department Detective Alvarado,
interviewed, Carlos Romero, a witness to the offense. Romero gave a written
statement, exculpating appellant and inculpating his co-defendant, Cano. The
Immigration and Naturalization Service (INS) was present during Romero’s
interview, and subsequently transported Romero to the detention center for further
investigation. Shortly thereafter, Romero was deported. 
          During a pretrial hearing on August 26, 2002, appellant asserted that a
continuance was necessary in order to obtain Romero’s testimony because he had
been deported to Honduras. Appellant argued that Romero’s testimony would be
both material and favorable to the defense because he could testify that all the shots
fired at the complainant were fired by appellant’s co-defendant, Cano. As evidence,
appellant relied on the State’s notice of exculpatory evidence, which stated, “Carlos
Romero indicates that all the shots fired at the deceased were fired by Jose Cano.” 
          Subsequently, the trial court sought to elicit any evidence that, “other than in
the regular course of what law enforcement and INS does, . . . there was any intent
to get [Romero] deported where he would not be available .” Upon questioning by
the trial court, the prosecutor denied knowledge of any involvement by the district
attorney’s office in instigating Romero’s deportation prior to trial. The prosecutor
also denied knowing who contacted INS regarding Romero’s presence in the United
States illegally, or how INS became involved. Thereafter, the trial court concluded
that, had either the district attorney’s office or local law enforcement notified INS that
they were interviewing Romero, “an illegal,” there would be no wrongdoing. At the hearing, it was established that appellant was aware the State had issued
a subpoena for Romero. It was also established that, because the State maintained
an open file in the underlying cause, appellant had access to all of the information
therein, including the fact that the subpoena was not served. Effectively, then,
appellant was afforded notice that the State had failed to locate Romero.
          Further, it was ascertained that appellant’s family was acquainted with
Romero’s family, leading the trial court to conclude that appellant effectively had
prior knowledge of Romero’s whereabouts. Thus, the trial court held that if
appellant planned to call Romero as a witness, appellant should have pursued an
avenue through INS to allow Romero legal access to this country. However,
appellant presented no evidence that he had either attempted to locate Romero, or to
compel Romero to testify, e.g., by issuance of subpoena. Based on these facts, and
the fact that appellant made no showing of improper conduct by the State to
eliminate Romero’s ability to testify, the trial court denied appellant’s motion for
continuance. 
          At trial, Detective Alvarado testified that he notified INS that Romero was a
material witness, and that he requested the District Attorney’s office hold Romero
as a material witness. In response to Alvarado’s request, the District Attorney’s
office explained that Romero could be deported because the State was not going to
call him as a witness. There is no evidence, however, that the State either
recommended or requested that Romero be deported.
          In regard to appellant’s argument that he was denied his constitutional rights
to compulsory process and to due process of law as a consequence of Romero’s
deportation, we note that “[a] defendant cannot normally complain that he was
deprived of a constitutional right, such as compulsory process, which he did not
attempt to exercise.” Drew v. State, 743 S.W.2d 207, 225 (Tex. Crim. App. 1987). 
Here, the record reveals that appellant failed to afford himself of his right to
compulsory process by requesting the issuance of a subpoena to compel Romero’s
attendance at trial. We hold that appellant has waived his right to compulsory
process by his failure to file his application for a subpoena pursuant to Tex. Code
Crim. Proc. Ann. art. 24.03 (Vernon 1989 & Supp. 2004). 
          Regarding appellant’s argument that the State denied him due process of law
by authorizing Romero’s deportation, the acts complained of must be of such quality
as necessarily prevents a fair trial. United States v. Valenzuela-Bernal, 458 U.S. 858,
872, 102 S. Ct. 3440, 3449 (1982). Here, however, there is no evidence that the
State “authorized” Romero’s deportation, or even that the State either recommended
or requested that INS deport Romero. Because there is no evidence that the State
engaged in any wrongdoing in connection with Romero’s deportation by INS, we
overrule appellant’s first and second points of error.
Impeachment Testimony Admitted Into Evidence
 
          In his third point of error, appellant contends that “the trial court abused its
discretion by admitting into evidence the otherwise inadmissible impeachment
testimony of Alvaro Espinoza when the State’s primary purpose in placing those out-of-court statements before the jury was for the truth of the matters asserted and
impeachment served as a subterfuge to avoid the hearsay rule.” 
          We review a trial court’s decision to admit or exclude evidence under an
abuse-of-discretion standard; we will thus not reverse a trial court’s ruling unless
that ruling falls outside the zone of reasonable disagreement. Torres v. State, 71
S.W.3d 758, 760 (Tex. Crim. App. 2002); Roberts v. State, 29 S.W.3d 596, 600 (Tex.
App.—Houston [1st Dist.] 2000, pet. ref’d). 
          Under the rules of evidence, the credibility of a witness may be attacked by
any party, including the party calling the witness. Tex. R. Evid. 607. However,
impeachment by prior inconsistent statements may not be permitted when employed
as a mere subterfuge to place before the jury evidence that is otherwise inadmissible. 
Hughes v. State, 4 S.W.3d 1, 9 n.9 (Tex. Crim. App. 1999). The Court of Criminal
Appeals has held that, when determining whether evidence is admissible under a rule
403


 balancing test, the trial court must consider the State’s knowledge that its own
witness will testify unfavorably. Hughes, 4 S.W.3d at 5 (Factors the court
considered under rule 403 analysis included: 1) lack of surprise or injury; 2) any
legitimate purposes in admitting prior inconsistent statements; and 3) lack of any
favorable testimony.). 
          Here, Detective Alvarado interviewed Espinoza twice regarding circumstances
surrounding the complainant’s death,


 and Espinoza gave a sworn, written and video-taped statement.


 The State subsequently called Espinoza to testify regarding his
knowledge of the complainant’s murder, but Espinoza surprised prosecutors by
testifying in a manner highly inconsistent with his prior written statement. While he
admitted writing the earlier sworn statement, Espinoza asserted that he had been
pressured by police to do so.


 Consequently, the State asked Espinoza about
statements he had made to police in the interview culminating in his written
statement; specifically, if Espinoza told Detective Alvarado and Officer Sepolio what 
another witness told him about the complainant’s murder. Appellant’s trial counsel
objected on the grounds of hearsay-within-hearsay, and the prosecutor responded,
asserting the State intended to impeach Espinoza with his prior inconsistent
statements.


 The trial court dismissed the jury to consider the objection.
          Although the trial court never expressly ruled on appellant’s objection, the
jury returned, and the State continued to question Espinoza regarding his prior
statement about his knowledge of complainant’s murder. Espinoza admitted meeting
with the prosecutor before trial to discuss his written statement, but he testified that
he lied to her when he admitted authoring his written statement, and, also, when he
reported overhearing appellant brag about shooting the complainant.
          Thereafter, the prosecutor asked Espinoza if, during his previous interview
before trial, he reported overhearing appellant and others discussing the reason why
complainant was murdered. Appellant’s trial counsel objected on the grounds of
hearsay. The trial court overruled the objection, with an instruction to the jury to
consider the statement only for purposes of whether or not the statement was made,
and not for the truth of the matter asserted. As the prosecutor continued her line of
questioning, appellant requested a running objection on the same grounds. The trial
court granted appellant’s running objection and re-instructed the jury not to consider
the statements for the truth of the matter asserted. 
          To summarize, Espinoza gave a sworn written, and video-taped statement
regarding the complainant’s death, corroborated by evidence gathered in the State’s
investigation, and by Officer Sepolio and Detective Alvarado, who testified that
Espinoza was not coerced or promised anything in exchange for his statement, or
instructed what to write. Espinoza corroborated his written statement in a
subsequent interview with prosecutors, reiterating his knowledge of the
complainant’s murder. Thus, the State was not expecting Espinoza to testify at trial
that 1) he knew nothing of the complainant’s murder, 2) his prior written statement
was nothing more than lies coerced by police, and 3) he also lied about
complainant’s murder in his interview with prosecutors. 
          Surprised by the material inconsistency in the testimony of its own witness,
the State reacted by attacking Espinoza’s credibility. Thus, the State’s legitimate
purpose in confronting Espinoza with his prior inconsistent statements was
impeachment. On these facts, we conclude that it was not outside the zone of
reasonable disagreement for the trial court to have decided that the probative value
of the impeachment testimony substantially outweighed any prejudicial effect. 
Accordingly, we overrule appellant’s third point of error.
Expert Testimony Admitted into Evidence
 
          In his fourth point of error, appellant contends that the trial court erred in
admitting Officer Sepolio’s “ expert testimony offered by the State to bolster the out-of-court statements made by Alvaro Espinoza which were admitted for the limited
purpose of impeachment as such evidence was not relevant to the purpose for which
the statements were admitted.” 
          We interpret this point of error as an objection based on relevance, and,
accordingly, we review the trial court’s decision to admit the evidence under an
abuse-of-discretion standard; we will thus not reverse the trial court’s ruling unless
that ruling falls outside the zone of reasonable disagreement. Torres, 71 S.W.3d at 
760; Roberts, 29 S.W.3d at 600. 
          In this case, the State’s witness, Officer Richard Sepolio, a gang investigator
with the Houston Police Department, testified that he was present during Espinoza’s
statement to Detective Alvarado on July 9, 2001, and, that Espinoza was not
threatened, coerced, or promised anything in return for his statement. Officer
Sepolio testified that no one dictated the statement to Espinoza, and, that, at the time,
Espinoza appeared calm, alert, and cooperative. Based on almost 12 years of
experience in HPD’s gang unit, Officer Sepolio explained that, although Espinoza
may have associated with known gang members, he believed Espinoza’s statement
to be credible. Subsequently, the prosecutor asked Officer Sepolio how his work in
the gang unit might be affected if he did not rely on statements made by persons who
“aren’t necessarily credible.” Appellant objected, on the grounds of relevance, and
the trial court overruled appellant’s objection. 
          However, to preserve a complaint for appellate review, a party must present
to the trial court a timely request, objection or motion, stating the specific grounds
for the ruling he desires the court to make if the specific grounds are not apparent
from the context. Tex. R. App. P. 33.1(a)(1)(A). Failure to object in a timely and
specific manner during trial forfeits complaints about the admissibility of evidence. 
Saldano v. State, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002). This is true even
though the error may concern a constitutional right of the defendant. Id. 
          Here, appellant’s objection came too late. Appellant failed to object when
Officer Sepolio began to testify regarding Espinoza and his statement. Because
appellant failed to object at his earliest opportunity, he has preserved nothing for
appellate review on this point. See Goldberg v. State, 95 S.W.3d 345, 368 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d) (To preserve error for appeal, appellant
was required to make a timely, specific objection at the earliest possible
opportunity.)
                    We overrule appellant’s fourth point of error. 
CONCLUSION
          We affirm the judgment of the trial court.
 
 
 
                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Higley.
Do not publish. Tex. R. App. P. 47.2(b).