# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00127-CR

**Fernando Sanchez, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
NO. 01-1031-K368, HONORABLE BURT CARNES, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

After a jury trial, appellant was convicted of the offense of possession of a controlled substance with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112 (West 2003). Appellant pleaded true to two penalty paragraphs alleging two previous felony offenses. The jury assessed punishment at life in prison as provided for a habitual felony offender. *See* Tex. Pen. Code Ann. § 12.42 (West 2003). In one issue on appeal, appellant contends that the trial court erred in refusing to admit impeachment evidence relevant to appellant's defense. We will affirm the conviction.

**Factual and Procedural Background[1]**

During the late evening hours of August 28, 2001, Georgetown Police Officers Lamont Navarette and Paul Justice were flagged down by Cenobio Resendez, a Georgetown resident. Resendiz complained to the officers that appellant, his next-door neighbor, had attempted to provide alcohol to his minor daughter. While the officers were on their way to appellant's residence, they received a loud noise complaint about appellant's residence. The officers were familiar with this residence as appellant was a registered sex offender wearing an ankle monitor. As the officers approached appellant's residence, they could see through a window that two people were standing inside. As they got closer, appellant emerged from the front door, appeared nervous, failed to make eye contact with the officers, and smelled of alcohol.

The officers asked appellant if any other people were inside the residence. Appellant said no, but agreed that the officers could go inside and see if anyone was there. The officers and appellant went inside. Once inside, appellant immediately knocked on an interior door. The door opened into a bedroom. The officers observed an adult male come out from under a bed. Justice heard a "stirring" in the closet; a juvenile male was hiding inside it. The officers took appellant and the other two males outside to question them. The two males who had been hiding inside the house fled but were ultimately restrained.

Ernest Barrerra, an acquaintance of appellant, then arrived at appellant's residence. He had noticed light from a flashlight in the house and thought maybe appellant was being robbed.

---

[1] Appellant does not challenge the legal or factual sufficiency of the evidence. We have detailed the facts only to the degree necessary to give context for the issue presented.

As he walked toward the house, all of the people inside the house came out. When Barrera saw that police officers were there, he attempted to leave, but was told to remain.

While inside the residence, the officers had detected the smell of burnt marihuana. Navarette then asked appellant if there were any illegal drugs inside the residence. Appellant said that he had none. When Navarette asked appellant if the police could search his residence for drugs, he said: "Yeah. Go ahead. There is nothing there." Christopher Johnson, another officer who had arrived at the scene by that time, also heard appellant consent to this search. Justice, who had returned to the scene after chasing the fleeing juvenile, also heard appellant consent, although he did not remember appellant's exact words. Navarette and Johnson searched the residence and found 117 grams of cocaine, much of which was packaged as if for distribution. The officers also found drug-related paraphernalia. The officers then attempted to arrest appellant for possession of cocaine; appellant resisted and tried to flee. The officers eventually used pepper spray to subdue appellant.

Appellant moved to suppress the cocaine and paraphernalia based on his assertion that he did not consent to the second search of the house.[2] At a pretrial hearing on the motion to suppress, appellant called Barrera to testify. Appellant asked Barrera whether he recalled a conversation between appellant and Navarette during which Navarette attempted to get appellant's consent to search his residence. Barrera replied that he was not sure about any such conversation. Appellant also asked Barrera whether he remembered a telephone conversation with Mike Davis, appellant's former counsel, concerning the events outside appellant's residence and appellant's lack of consent to the second search. Barrera replied that he did not remember such a telephone

---

[2] It is undisputed that no warrant was obtained before the second search.

3

conversation with Davis. He only remembered a conversation with Davis concerning scheduling matters with regard to the trial.[3]

Appellant later called Barrera to testify at trial. Appellant tried to establish that Barrera would have been within earshot of the officers and appellant. Barrera testified that he did not hear appellant either give consent or forbid entry. Appellant asked Barrera if he heard anything. Barrera said: "No. I'm not sure. I know they asked him a question. I'm sure it was to search. But I just—I don't recall. I don't remember. I just don't know." Appellant later asked whether Barrera remembered advising Davis that he was present when the officer asked appellant for consent and appellant said no. Barrera said he did not remember making that statement. He did not deny a telephone conversation happened; he simply did not remember telling Davis anything about appellant's consent or lack thereof to the search. Appellant then asked Barrera if he had talked to prosecutors in the week before trial. He said he had and admitted that the prosecutors had reminded him that he was on felony probation and raised the subject of perjury.

After Barrera testified, appellant attempted to introduce testimony from Davis concerning a telephone conversation that had taken place between Davis and Barrera. In a hearing outside the jury's presence, Davis testified that Barrera had told him during a telephone conversation that Barrera heard appellant tell the police, "No, I don't think so," when the police asked appellant for consent to search the second time. The court did not allow Davis to testify before the jury about this phone call.

---

[3] The court overruled the motion to suppress.

Appellant also called Esau Ochoa, the man who had been hiding under the bed, to testify. He testified that he had heard appellant say, "No, I don't think so" when asked by Navarette whether he could search appellant's residence.[4]

The trial court charged the jury that it could not consider any evidence obtained by the police unless they found by clear and convincing evidence that appellant had voluntarily consented to a search of his residence. In one issue on appeal, appellant challenges the ruling excluding Davis's testimony under the theory that the court erroneously excluded proper impeachment evidence.

## Discussion

### *Prior Inconsistent Statements*

The credibility of a witness may be attacked by any party, including the party calling the witness. Tex. R. Evid. 607. A party may impeach a witness with evidence of a prior inconsistent statement if the party first presents the witness with the existence of the statement, the details and circumstances surrounding the statement, and gives the witness the opportunity to explain or deny the statement. Tex. R. Evid. 613(a). To be admissible under Rule 613(a), a prior statement must be inconsistent with the one given at trial. *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). If the witness claims not to remember the event about which he is alleged to have made a prior out-of-court statement, then the trial court must determine whether such memory loss is feigned

---

[4] Appellant also called two other witnesses to challenge the officers' account of events (his mother and sister-in-law). Appellant makes no complaint on appeal of any hindrance to his ability to challenge the officers' credibility; he only challenges the refusal to allow impeachment testimony concerning Barrera.

5

or real. *See United States v. Causey*, 834 F.2d 1277, 1282-83 (6th Cir. 1987) (trial judge has considerable discretion in determining whether testimony is inconsistent with prior statements and "inconsistencies can be found in changes in positions implied through silence or a claimed inability to recall"). If the claimed lack of memory is valid, then the prior statement is not "inconsistent" for purposes of Rule 613(a). *See generally* 1 Stephen Goode *Guide to the Texas Rules of Evidence* § 613.3 at 800 & n.15 (Texas Practice Series, 3d ed. 2002). A party may not impeach its own witness if the primary purpose is merely to get the witness's prior statement before the jury. *Hughes v. State*, 4 S.W.3d 1, 4 (Tex. Crim. App. 1999); *Barley v. State*, 906 S.W.2d 27, 37 n.11 (Tex. Crim. App. 1995); *see generally* Goode § 607.2 at 697 & n.31.

Even if a prior inconsistent statement is admitted, it may be used only for impeachment, not as substantive evidence, unless it otherwise falls within an exception to the hearsay rule. *See Miranda v. State*, 813 S.W.2d 724, 735 (Tex. App.—San Antonio 1991, pet. ref'd). The admissibility of a prior inconsistent statement is also subject to Texas Rule of Evidence 403. *See Hughes*, 4 S.W.3d at 5; *Miranda*, 813 S.W.2d at 735. A trial court's duty, when presented with the issue of the admissibility of a prior inconsistent statement is to balance the probative value, or legitimate impeachment purpose of the statement, against the danger of unfair prejudice to the opposing party in the form of the potential misuse of the statement by the trier of fact for substantive purposes. *Id*. A trial court's ruling on the admissibility of a prior inconsistent statement is reviewed under an abuse of discretion standard of review. *Lopez*, 86 S.W.3d at 230. As long as the court's ruling is within the zone of reasonable discretion, we will not intercede. *Id.*

6

Outside the jury's presence, the trial court analyzed the admissibility of Davis's testimony under Rules 613(a) and 403. The court noted that if a witness truly does not remember the event about which he had made a previous statement, there is nothing to impeach. The court then expressed this concern: "The fact that Ernest Barrera is untruthful isn't really the issue. The issue is the substance of the statement [concerning lack of consent], wanting to get that. That's the only probative value that I see in it at all. . . . And you've already asked the question with the statement [asking whether Barrera remembered making the statement to Davis about the lack of consent]." Further, "[T]he only thing that Ernest Barrera had to say that I see that's important to the issue, and the issue is consent, is at this time he doesn't remember." The court then excluded Davis's proffered testimony concerning the telephone conversation.

Under Rule 403, the trial court had to balance the danger of unfair prejudice created by the jury misusing a statement for substantive purposes against the probative value of admitting the prior inconsistent statement for its legitimate purpose. *Miranda*, 813 S.W.2d at 735. That the defendant knew that Barerra had testified at the pretrial hearing that he did not remember is a factor the court could consider in its analysis of whether the attempt to impeach Barerra was a sham or subterfuge to allow Davis to testify to an out-of-court statement by Barrera. *See Hughes v. State*, 4 S.W.3d at 5 (Tex. Crim. App. 1999) (knowledge that own witness will testify unfavorably is a Rule 403 factor; "surprise" no longer necessary under Rule 607). The court had to weigh the danger of the jury improperly considering Davis's testimony for substantive purposes, i.e., the truth of appellant's lack of consent to search, against the probative value to appellant of trying to undermine Barrera's credibility. However, Barrera's testimony was minimal: he testified only to his arrival at

7

the house, finding the police officers there, and his lack of memory concerning appellant's consent. He testified that his focus at the time was on getting himself out of the situation at appellant's house. The record reflects that the court could reasonably have concluded that Barerra's lack of memory was real so there was nothing to impeach. It conducted a balancing test on the record and could reasonably have concluded that the danger of misuse of Davis's testimony by the jury outweighed the impeachment value of that testimony. The trial court did not abuse its discretion in excluding Davis's testimony.

***Harmless Error***

If the trial record reveals non-constitutional error, an appellate court shall not reverse the judgment under review if the appellate court determines that the error did not affect the substantial rights of the defendant. Tex. R. App. P. 44.2(b). The substantial right at issue in this case is the right of a criminal defendant to impeach a witness. *See Roethel v. State*, 80 S.W.3d 276 (Tex. App.—Austin 2002, no pet.).

Even if we assume that the trial court erred in excluding Davis's testimony concerning Barrera's out-of-court statement, such error did not affect appellant's substantial rights. Appellant's questions to Barrera at trial raised in front of the jury the possibility that Barrera might have changed his story about appellant's consent and further suggested that Barerra's lack of memory concerning the consent issue might have been due to prosecutorial influence. Barrera's testimony was not particularly helpful to appellant, but neither was it particularly harmful, so there was no significant value in impeaching Barrera's testimony through Davis, as Barrera's credibility had already been called into question.

8

Finally, appellant called another witness, Esau Ochoa, who contradicted the police officers and testified before the jury to appellant's lack of consent. Davis's testimony would have simply "bolstered" evidence already in front of the jury.

## Conclusion

We hold that the trial court did not abuse its discretion in excluding Davis's testimony. We overrule appellant's only issue and affirm the trial court's judgment.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   March 24, 2005

Do Not Publish