# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00502-CR

**Tony Rodriguez Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. D-1-DC-09-904040, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Tony Rodriguez, Jr., of the offense of arson. *See* Tex. Penal Code Ann. § 28.02 (West Supp. 2009). Punishment was assessed at eighteen years' imprisonment. In a single issue on appeal, Rodriguez asserts that the district court abused its discretion by admitting evidence of a prior inconsistent statement made by the State's rebuttal witness. We will affirm the judgment.

## BACKGROUND

The jury heard evidence that on the night of October 31, 2008, Alex and Norma Gonzalez's house caught on fire and burned to the ground. According to Lieutenant Brooks Frederick of the Austin Fire Department, who investigated the fire, the cause was arson. Frederick testified that during his investigation, he ruled out the possibility of accidental sources of

ignition and natural causes (such as a lightning strike) and determined that someone had intentionally set clothes on fire in the garage. The fire eventually spread throughout the house, destroying it.

The suspect in the arson was Rodriguez, the boyfriend of the Gonzalezes' second youngest daughter, Jennifer, and the father of four of their grandchildren. The evidence tended to show that the Gonzalezes and Rodriguez had a hostile relationship. In fact, witnesses testified that on the night of the fire, during a Halloween party at the Gonzalezes' house, Rodriguez and Norma had gotten into a physical altercation that resulted in Rodriguez being injured and police being called to the residence. Upon arrival, officers arrested Norma and instructed Rodriguez to leave the premises. According to witnesses, Rodriguez did so, and the party continued. One of Jennifer's friends who had attended the party, Corrine Martinez, testified that shortly thereafter, Rodriguez returned to the residence, followed her inside, and then walked out after she and others had told him to leave.

The only witness who claimed to have seen the fire being set later that night was ten-year-old D.F., one of the Gonzalezes' grandchildren. D.F. testified that he was awake in his bedroom watching television when he observed Rodriguez outside the house, setting fire to a Halloween decoration outside the garage using a cigarette lighter. D.F. further recalled that, at around the same time, he observed paper on fire in the front yard.

The defense called three witnesses to testify: Rodriguez's cousin, Johnny Jaimes; Jaimes's brother, Angel; and Jasmine Garcia, the Gonzalezes' neighbor. Garcia briefly testified that she knew Norma Gonzalez and that Norma had a reputation for being "untruthful." Johnny Jaimes testified that he had attended the party that night, that everyone was drinking and smoking

marihuana, and that Rodriguez never returned to the house after the police told him to leave. Angel Jaimes testified similarly. Angel also claimed that D.F. was asleep in his bedroom when the fire started.

On rebuttal, the State called one witness, Jennifer Gonzalez, who was present at the house during the party. At first, Gonzalez testified that after Rodriguez left the house, "he didn't come back." However, the State then impeached Gonzalez with a prior statement she had provided to the fire investigator. Over objection by defense counsel, the State asked Gonzalez to read the following from her handwritten statement: "Cops left and Tony did too. He returned about 15 minutes later and all of us said me and Corrine smell smoke coming from the garage." On cross-examination, Gonzalez claimed that she did not tell the truth in that statement. She explained, "I just want acceptance from my family, so I wrote what they told me to write."

The jury found Rodriguez guilty of committing the offense of arson, and he was sentenced to eighteen years' imprisonment. This appeal followed.

**STANDARD OF REVIEW**

When reviewing a trial court's decision to admit or exclude evidence, we apply an abuse-of-discretion standard. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). The trial court does not abuse its discretion unless its ruling lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).

3

## ANALYSIS

In his sole issue on appeal, Rodriguez asserts that the district court abused its discretion in admitting Gonzalez's prior inconsistent statement. Rodriguez contends that by admitting the evidence, the district court violated the rule prohibiting the State from using "prior inconsistent statements under the guise of impeachment for the primary purpose of placing substantive evidence before the jury which is not otherwise admissible." *See Hughes v. State*, 4 S.W.3d 1, 7 (Tex. Crim. App. 1999). In *Hughes*, the court of criminal appeals acknowledged that Rule 607 permits the credibility of a witness to be attacked by any party, including the party calling the witness. *See id* at 5. The court of criminal appeals held, however, that the State cannot impeach its own witness if the primary purpose of that impeachment is to place otherwise inadmissible substantive evidence before the jury. *See id*. at 7. In *Hughes*, the impeachment evidence was inadmissible hearsay. *See id*. at 3. According to the court in *Hughes*, when the State attempts to impeach its own witness with otherwise inadmissible evidence, such evidence should be excluded if the prejudicial impact of the evidence substantially outweighs its probative value. *See id*. at 5. Therefore, for a defendant to prevail on a *Hughes* complaint, the court must find that the admission of the evidence violates rule 403. *See id*. at 7.

We cannot conclude on this record that the district court abused its discretion in admitting the evidence. The State's knowledge that its own witness will testify unfavorably is a factor the trial court must consider when determining whether the impeachment evidence is admissible under rule 403. *See Hughes*, 4 S.W.3d at 5. Here, the district court would not have abused its discretion in finding that the State did not have such knowledge. The State explained

4

at trial that Gonzalez had made two prior sworn statements that, according to the State, were consistent and confirmed that Rodriguez returned to the home the night of the fire. The district court would not have abused its discretion in finding that the State had reason to believe, when it first called Gonzalez to the stand, that Gonzalez's testimony would be consistent with her prior statements and that the State did not have knowledge that her testimony would actually be inconsistent with those statements. Also, two witnesses, Corrine Martinez and D.F., had already testified that they saw Rodriguez at the house after he had earlier left. Thus, the district court would not have abused its discretion in finding that the State had reason to believe that Gonzalez's testimony would be consistent with the testimony of these other witnesses. Additionally, because these other witnesses testified to the same fact that the State elicited from Gonzalez (that Rodriguez had returned to the residence), the district court would not have abused its discretion in finding that this diminishes whatever prejudicial impact the impeachment evidence may have in a rule 403 *Hughes* analysis. *See Kelly v. State*, 60 S.W.3d 299, 302 (Tex. App.—Dallas 2001, no pet.) (concluding that impeachment evidence need not be excluded under *Hughes* partly because "there were sources of the critical evidence other than the hearsay testimony").

The only indication in the record that the State might have had reason to suspect that Gonzalez would testify unfavorably appears in an exchange during the examination of a prior witness, Corrine Martinez. During her testimony, the State attempted to introduce Gonzalez's out-of court statement to Martinez that "Jennifer said Tony lit the fire." Defense counsel objected on the basis of hearsay. In response, the State argued that it was admissible as an excited utterance and added, "Especially when I expect her to testify to the complete opposite, to take the stand

and lie." The district court replied, "They might open the door, but they haven't opened it yet." The district court then sustained the hearsay objection. Although this is some indication that the State suspected that Gonzalez would testify unfavorably on that particular statement, it would not be outside the zone of reasonable disagreement for the district court to find that the State was referring only to Gonzalez's statement that "Tony lit the fire," and not to her prior sworn statements that Rodriguez had returned to the house. *See Kelly*, 60 S.W.3d at 302 (explaining that in *Hughes*, State knew that "its witness had recanted once and likely would again, but it called her nonetheless" and that State's "suspicion" that its witness would turn does not mean that State had "reason to know this for certain"). We cannot conclude on this record that the district court abused its discretion in admitting the evidence.

Finally, even if the evidence should not have been admitted, we could not conclude on this record that Rodriguez was harmed by its admission. A trial court's error in admitting evidence should be disregarded unless the error affected appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). "[S]ubstantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (quoting *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). Factors to consider in our analysis include the other evidence in the case and its relationship to the erroneously admitted evidence, the trial court's instructions to the jury regarding the evidence, and the emphasis placed on the evidence during closing arguments. *See Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

6

As we have already explained, there was other evidence in addition to Gonzalez's testimony supporting the State's theory that Rodriguez returned to the residence after he had left. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("It is well settled in this state that the erroneous admission of testimony is not cause for reversal, if the same fact is proven by other testimony not objected to."). We also observe that the district court provided the following limiting instruction regarding the impeachment evidence:

> You are instructed that witnesses may be impeached by showing that they have made other and different statements out of court, or upon a former judicial investigation of the facts, from those made before you on the trial. You may consider such impeaching evidence, if any, as it may tend to affect the weight to be given the testimony of the witnesses so impeached and their credibility (if it does so); but such impeaching evidence, if any, is not to be considered by you as tending to establish the alleged guilt of the defendant, or any fact in the case.

Thus, the jury was instructed not to consider the evidence for the truth of the matter asserted. *See Hughes*, 4 S.W.3d at 5 (explaining that impeachment evidence is prejudicial when "the State profits from the witness's testimony only if the jury misuses the evidence by considering it for its truth"). Furthermore, the record reveals that the State did not emphasize Gonzalez's testimony during its closing argument. Instead, it focused on D.F.'s testimony identifying Rodriguez as the person who started the fire. On this record, we cannot conclude that the admission of Gonzalez's testimony influenced the jury, or had but a slight effect.

We overrule Rodriguez's sole issue on appeal.

7

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   June 23, 2010

Do Not Publish