NO. **957-15**

ORIGINAL

COURT OF CRIMINAL APPEALS OF TEXAS

TEX. R. APP. P. 68.2(a)

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 25 2015

Abel Acosta, Clerk

LEROY FLORES ALANIZ,

Appellant

FILED IN
COURT OF CRIMINAL APPEALS

SEP 25 2015

Abel Acosta, Clerk

v.

THE STATE OF TEXAS,

Appellee

On Petition for Discretionary Review

Ffrom the Eleventh Court of Appeals

in No. 11-12-00352-CR Affirming the Conviction

in No. D-37,921 from the

358th Judicial District Court

of Ector County, Texas

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

Leroy Flores Alaniz
TDCJ No. 1826767
French M. Robertson Unit
12071 FM 3522
Abilene, Texas 79601

Appellant, pro se

## IDENTITIES OF PARTIES AND COUNSEL

APPELLANT:                  Leroy Flores Alaniz

APPELLEE:                 State of Texas


COUNSEL OF RECORD ON APPEAL:

   FOR APPELLANT:         E. Jason Leach
                             Law Office of E. Jason Leach
                             3800 E. 42nd, Suite 605
                             Odessa, Texas 79762
                             SBN: 00796938

   FOR APPELLEE:          Mr. R.N. (Bobby) Bland, District Attorney
                             Ector County District Attorney
                             300 N. Grant, Rm. 305
                             Odessa, Texas 79761
                             SBN: 00790319


COUNSEL OF RECORD AT TRIAL:

   FOR DEFENDANT:         E. Jason Leach
                             Law Office of E. Jason Leach
                             3800 E. 42nd, Suite 605
                             Odessa, Texas 79762
                             SBN: 00796938

   STATE OF TEXAS:        Greg Connor
                             Asst. Ector County District Attorney
                             300 N. Grant, Rm. 305
                             Odessa, Texas 79761
                             SBN: 24054878

                             Lee McClendon
                             Asst. Ector County District Attorney
                             300 N. Grant, Rm. 305
                             Odessa, Texas 79761
                             SBN: 13408640

   JUDGE PRESIDING:      Honorable Bill McCoy
                             Judge, 338th Judicial District Court
                             Ector County, Texas

# TABLE OF CONTENTS

Identity of Judge                                          i

Table of Contents                                         ii

Index of Authorities                                     iii

Statement Regarding Oral Argument                          1

Statement of the Case                                      2

Statement of Procedural History                            3

Ground for Review 1                                        4

  .  Did the court of appeals err by concluding that the critical portions of the hearsay statement admitted at trial as impeachment evidence were admissible under the exception provided by Tex. R. Evid. 803(24)?

Reason for Review                                          5

Statement of Facts                                       6-7

Argument                                                8-13

Prayer                                                    13

Unsworn Declaration                                       14

Certificate of Service                                    15

Certificate of Compliance                                 15

Appendix                                                  16

# INDEX OF AUTHORITIES

CASES

Blake v. State,
971 S.W.2d 451 (Tex.Crim.App. 1998)                              12

Hughes v. State,
4 S.W.3d 1 (1999)                                                 8


STATUTES

Tex. R. App. P. 38.1                                              8

Tex. R. App. P. 66.3(f)                                          5

Tex. R. Evid. 803(24)                                  4, 7, 9, 13

## II.  STATEMENT REGARDING ORAL ARGUMENT

Because Appellant is proceeding pro se as an incarcerated prisoner, oral argument is not requested.

1

## V. STATEMENT OF THE CASE

Alaniz was charged in a two-count indictment with the offenses of capital murder and murder (I C.R. at 6-7). He proceeded to trial and a jury convicted him of the offense of capital murder (I C.R. at 123). He was sentenced to life imprisonment in the Texas Department of Criminal Justice (I C.R. at 133-134).

## VI. STATEMENT OF PROCEDURAL HISTORY

Appellant's conviction was affirmed by the Eleventh Court of Appeals in an opinion delivered July 9, 2015. No motrion for rehearing was filed.

## GROUND FOR REVIEW 1

DID THE COURT OF APPEALS ERR BY CONCLUDING THAT THE CRITICAL PORTIONS OF THE HEARSAY STATEMENT ADMITTED AT TRIAL AS IMPEACHMENT EVIDENCE WERE ADMISSIBLE UNDER THE EXCEPTION PROVIDED BY TEX. R. EVID. 803(24)?

## REASON FOR REVIEW

The court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision. Tex. R. App. P. 66.3(f).

<u>Statement of Facts:</u>

Alaniz contends that the trial court abused its discretion when it allowed the State to place otherwise inadmissible evidence (in the form of Sonny Alaniz's testimony and prior statement) before the jury. Sonny Alaniz's ("Alaniz") typewritten statement was introduced into evidence and used as substantive evidence by the State of Texas in its final argument.

Sonny Alaniz, the nephew of Appellant, Leroy Alaniz, was called to testify on behalf of the State of Texas (VI R.R. at 23). A hearing was held outside the presence of the jury to determine the voluntariness of the statement he had given as a 17-year-old (VI R.R. at 24). During this hearing it was discovered he would deny any memory of his prior statements.

He consistently stated "I don't remember" when asked about a prior statement he had given (VI R.R. at 26). When asked about a robbery he stated "I don't remember", when asked about a gun he stated "I don't remember" (VI R.R. at 26). When he was asked about a robbery he had allegedly done with his uncle Leroy he stated "I don't remember" (VI R.R. at 27). Eventually, he stated that he had no memory of giving any statement to the police (VI R.R. at 28).

Counsel objected, pursuant to Rule 403 of the Texas Rules of Evidence, to the State calling Sonny Alaniz simply to place into evidence a statement that he was going to deny having any memory of (VI R.R. at 32-36). The trial court overruled the

objection but granted a running objection to counsel so he would not be required to object after every single question by the State (VI R.R. at 42).

Even though the prosecution and trial court knew, before the jury was ever brought back into the courtroom that Sonny Alaniz would deny any memory of the statement, questioning on this topic was nevertheless permitted.

The court of appeals overruled the issue without considering whether the hearsay statement of Sonny Alaniz constituted improper impeachment evidence based on its determination that the critical portions of Sonny Alaniz's written statement were admissible in their own right as substantive evidence under Tex. Rule of Evidence 803(24) (Memo. Op. at 2-12).

## Argument

The court of appeals' disposition so far departs from the accepted and usual course of judicial proceedings, or so far sanctions such a departure by the lower trial court, as to call for an exercise of the Court of Criminal Appeals' supervisory power.

First, the rules of appellate procedure require the court of appeals to decide the issue as briefed by the parties in accordance with Rule 38.1, with which the parties in this case have complied. The parties briefed this case on whether or not Sonny Alaniz's ("Alaniz") prior written statement, admitted into evidence in this case on an impeachment theory, was proper impeachment evidence. However, the court of appeals did not reach this issue. Instead, it disposed of the case based on erroneous conclusion that the trial court would not have abused its discretion had it permitted admission of Alaniz's statement under the hearsay exception provided by Rule of Evidence 803(24) (Memo. Op. at 10-11).

Second, the Court's decision in Hughes v. State, 4 S.W.3d 1 (Tex.Crim.App. 1999), requires the trial court, upon a proper Rule 403 objection, to conduct an "improper impeachment" analysis whenever a party attempts to admit a prior inconsistent statement under the guise of impeachment when the party's primary intent in calling the witness is to introduce inadmissible hearsay. The trial court did not comply with the mandates of Hughes,

but instead, permitted the State to offer Alaniz's written statement into evidence in absence of anything within the record that the State had any other purpose for presenting Alaniz's statement other than to place before the jury evidence which was otherwise inadmissible. Because the court of appeals did not consider whether the written statement constituted improper impeachment evidence, the issue raised by Appellant has yet to be decided.

## Court of appeals' conclusion that critical portions of statement were admissible was erroneous.

In disposing of the case, the court of appeals concluded that the critical portions of Alaniz's written statement were admissible under the hearsay exception provided by Rule of Evidence 803(24). This conclusion is not fairly supported by the record and thus constitutes reversible error.

In pertinent part, Rule 803(24) permits the admission of a statement that a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it had so great a tendency to expose the declarant to criminal liability, and is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability. TEX. R. EVID. 803(24) (Vernon's 2015).

Here, the critical portions of Alaniz's written statement

9

do not have any great tendency to expose him to criminal liability.

The court of appeals opined that Alaniz stated that he drove Appellant to the Diamond Shamrock station, waited on him, and then drove him away from that station, and that this account by Alaniz would have subjected him to criminal liability. However, there's no evidence in the record, save Alaniz's hearsay statement, that a robbery or attempted robbery of the Diamond Shamrock station on South Crane Street had actually occurred on or around November 9, 1991. No police report of any such robbery or attempted robbery was presented by the State, and no other witness testimony was put forth corroborating Alaniz's statement that such a robbery/attempted roobery had occurred. There was no evidence put forth of any witness having seen Appellant in, at, or around the said Diamond Shamrock station as alleged by Alaniz. Nor was there any evidence put on that a sawed-off .22 rifle had been reportedly found in the vicinity of the said station, nor any evidence coming from any witness having seen the stolen truck, alleged by Alaniz to have been his and Appellant's mode of transportation during the alleged Diamond Shamrock robbery, in the vicinity of the said station around the date in question. No evidence exists in the record that a follow-up investigation by police based on Alaniz's written statement had produced any tangible evidence corroborating his assertions that he and Appellant had committed a robbery/attempted robbery of the said station. finally, the detective who went to question Alaniz at the Ector County Youth Center was not there to question

him about the robbery/attempted robbery alleged in the statement.

In short, there's absolutely no evidence in the record from any source which corroborates the critical portions of Alaniz's hearsay statement. In absence of any such corroborating evidence, Alaniz's statement did not and does not expose him to criminal liability, as evidenced by the fact that he nor anyone else was ever charged with the alleged robbery/attempted robbery.

Three portions of Alaniz's statement should have provided the court of appeals with significant indication that the statement is not trustworthy: (1) Alaniz's averment that the detective had indicated that Alaniz was suspected by authorities as being involved in the Party House Lounge robbery; (2) Alaniz averring that the detective had just revealed to him the details of the Party House Lounge robbery, including that Appellant and Paul (Escandon) allegedly had been involved, that a person had died from injuries received during that robbery, and that a sawed-off .22 rifle had been used; and (3) Alaniz averring that when he and Appellant allegedly had went to rob the Diamond Shamrock, Appellant supposedly told him that he did not rob or attempt to rob the station.

The detective revealing to Alaniz that he was suspected by authorities of being an accomplice to a robbery/homicide gives rise to Alaniz's statement being viewed with caution where Texas law has long recognized that accomplices often have incentive to lie, such as to avoid punishment or to shift blame onto

11

someone else. See <u>Blake v. State</u>, 971 S.W.2d 451, 454 (Tex.Crim. App. 1998) (accomplice witness rule reflects legislative determination that accomplice testimony implicating another person should be viewed with measure of caution, because accomplices often have incentive to lie, such as to avoid punishment or shift blame to another person). Being as he was already aware of specific details of the Party House Lounge robbery, due to Detective Thomas' revelations, Alaniz could have easily fabricated the storyy of a purported robbery of a Diamond Shamrock to appease Det. Thomas by appearing to "cooperatively" provide information useful to Det. Thomas' investigation while also directing any suspicion away from himself by bolstering the detective's purported belief that Alaniz was not actually involved in the Party House Lounge robbery.

Moreover, Alaniz stating that Appellant told him that he did not "do" the Diamond Shamrock robbery upon Alaniz supposedly picking him back up away from the station could have easily been an attempt by Alaniz to make his Diamond Shamrock story appear more credible to the detective where occurrence of such a robbery/attempted robbery of the specified Diamond Shamrock could easily be dispelled simply by the detective reviewing police records and/or the detective interviewing the owner and employees of the specified Diamond Shamrock.

Certainly, these aspects of Alaniz's statement raise significant question as to the trustworthiness of the statement, and, at a minimum, remove any "clear" indication that the statement

12

is trustworthy. See Rule 803(24)(B).

It could easily have been that Alaniz was well aware that his story of he and Appellant robbing the said Diamond Shamrock was a fabrication that did not in any significant way expose him to criminal liability where it could not be corroborated by any tangible evidence of the station being robbed as he purported because it simply never occurred.

For these reasons, the trial court would have abused its discretion had it determined that the critical portions of the hearsay statement of Alaniz were admissible under the Rule 803 (24) exception. For the same reasons, the court of appeals abused its discretion in determining that the critical portions of Alaniz's hearsay statement were admissible in their own right as substantive evidence, and in concluding that it need not consider whether paragraphs 5, 6 and 7 of Alaniz's statement constituted improper impeachment evidence (Memo. Op. at 11).

PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Honorable Court grant discretionary review in this case. Appellant prays for general relief.

_____

13

Respectfully submitted,

Leroy Flores Alaniz
TDCJ No. 1826767
French M. Robertson Unit
12071 FM 3522
Abilene, TX 79601

Appellant, pro se


UNSWORN DECLARATION

I, Leroy Flores Alaniz, TDCJ No. 1826767, being presently incarcerated at the French M. Robertson Unit of the Texas Department of Criminal Justice-Correctional Institutions Division, located in Jones County, Texas, hereby declare under penalty of perjury that the foregoing is true and correct, and placed in the outgoing prison mailbox on this 23 day of September, 2015, to be mailed U.S. Mail, first-class postage prepaid, addressed to:

Court of Criminal Appeals of Texas
P.O. Box 12308, Capitol Station
Austin, TX 78711-2308

Executed on this the 23 day of September, 2015.

Leroy Flores Alaniz

14

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing petition for discretionary review has been duly served upon counsel for the opposing party to this case by placing same in the outgoing prison mailbox on the 23 day of September, 2015, to be mailed first-class postage prepaid addressed to:

Michael Bloch
Assistant District Attorney
Ector County Courthouse
300 N. Grant, Room 305
Odessa, TX 79761

Leroy Flores Alaniz

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading consists of less than 1,300 lines of monospaced typeface at 10 charaters per inch.

Leroy Flores Alaniz

15

APPENDIX

Memorandum Opinion

Leroy Flores Alaniz vs. The State of Texas
Eleventh Court of Appeals
No. 11-12-00352-CR

(July 9, 2015)



In The

# Eleventh Court of Appeals

## No. 11-12-00352-CR

## LEROY FLORES ALANIZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 358th District Court
### Ector County, Texas
### Trial Court Cause No. D-37,921

## MEMORANDUM OPINION

The jury found Leroy Flores Alaniz, Appellant, guilty of capital murder for a murder that occurred over twenty years prior to the date of trial. Because the State did not seek the death penalty, punishment was assessed at a mandatory term of life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. In his sole issue on appeal, Appellant challenges the admission of a written statement given by his nephew to the police. We affirm.

*Background Facts*

Appellant was indicted in 2010 for the capital murder and murder of Larry Alan Willsey, which occurred in 1991. The State alleged that Appellant went to the Party House Lounge in Odessa accompanied by another Hispanic male. One carried a bat, while the other carried a sawed-off gun. The two men instructed the bartender to give them all of the money in the cash register. The men also instructed the patrons of the bar to get on the floor. Willsey apparently moved too slowly getting down on the floor to satisfy the men. In response, the man with the bat struck Willsey with the bat and knocked him to the floor. Both men repeatedly struck and kicked Willsey while he was on the floor. The men eventually left the bar with the money from the cash register and money from a football pool being conducted at the bar. Willsey subsequently died from his injuries.

At the trial, which occurred more than twenty years later, the State called the responding and investigating officers to testify, as well as a criminalist to compare the DNA from Appellant with a ski mask worn by one of the men. The bartender on duty that night and the owner of the Party House Lounge also testified.

The State called Sonny Alaniz as its last witness. Alaniz[1] is the nephew of Appellant. In January 1992, a police officer spoke with Alaniz about the robbery at the Party House Lounge. Alaniz executed a notarized witness statement wherein he stated, among other things, that Appellant possessed a .22 caliber sawed-off rifle and that Alaniz participated in another robbery with Appellant at a Diamond Shamrock station.

*Analysis*

In his sole issue, Appellant challenges the admission of Alaniz's witness statement because "both the State and the [trial] court had prior knowledge that the

---

[1]For the sake of clarity, we will refer to Appellant as "Appellant," and we will refer to his nephew as "Alaniz."

witness would not recall the statement." Appellant argues that the State used the prior witness statement "under the guise of impeachment for the primary purpose of placing substantive evidence before the jury which is not otherwise admissible." Appellant cites *Hughes v. State*, 4 S.W.3d 1, 4 (Tex. Crim. App. 1999), in support of this proposition. We review a trial court's ruling on admissibility of evidence for an abuse of discretion. *See Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001).

The court in *Hughes* addressed those situations wherein a party attempts to admit a prior inconsistent statement under the guise of impeachment when the party's primary intent in calling the witness is to introduce inadmissible hearsay. *Hughes*, 4 S.W.3d at 4. The court concluded that the proper objection in this circumstance is an objection under Rule 403 for the trial court to conduct a balancing test under the rule. *Id.* at 4–5; *see* TEX. R. EVID. 403. "[A] trial court abuses its discretion under Rule 403 when it allows the State to admit impeachment evidence for the primary purpose of placing evidence before the jury that was otherwise inadmissible." *Id.* at 5. Factors to consider in the analysis include whether the State was aware its witness would testify unfavorably, whether the State was able to elicit any favorable testimony from the witness, and whether the State had a legitimate purpose for eliciting the prior inconsistent statement. *See id.* at 4–7; *see also Kelly v. State*, 60 S.W.3d 299, 301 (Tex. App.—Dallas 2001, no pet.).

On the morning of the last day of trial, the proceedings began with Appellant's trial counsel informing the court that he believed that the State intended to call Alaniz as a witness. Counsel stated that the prosecutors "know now . . . that [Alaniz] is going to deny his statement that he gave." Counsel further stated, "I have a [R]ule 403 objection to them calling him when they know specifically that they want

to impeach him with a statement that would otherwise be inadmissible that implicates my client." *See* TEX. R. EVID. 403. One of the prosecutors responded by informing the trial court that he had no information or indication that Alaniz would deny his statement. The prosecutor further asserted that he had no intention of impeaching Alaniz with the written statement and that he had "every reason to believe" that Alaniz would acknowledge making the statement. The trial court ruled that the State would be permitted to call Alaniz as a witness based upon the prosecutor's representations. Accordingly, Appellant seemingly made the correct objection pursuant to *Hughes*, and the trial court made an appropriate determination under Rule 403 that the State did not intend to call Alaniz for an improper purpose.

At the conclusion of the Rule 403 determination, the trial court granted the prosecutor's request for a brief recess. After the recess and prior to the beginning of witness testimony, Appellant's trial counsel raised the matter of the voluntariness of Alaniz's statement. In response, the trial court advised the parties that it would conduct a hearing on the voluntariness of Alaniz's statement prior to his trial testimony.

After the State offered the brief testimony of another witness, the trial court recessed the jury and conducted a hearing concerning the voluntariness of Alaniz's statement. The hearing on the voluntariness of Alaniz's statement began with the prosecutor asking Alaniz about the details of him giving the statement. Those details included that the statement was taken two days after Alaniz's seventeenth birthday while he was incarcerated at a youth center. Alaniz testified that he did not remember giving a statement to a police officer. However, he recalled a police officer coming to pick him up at the youth center. Alaniz also recalled that the police officer showed him pictures of an autopsy and that the officer accused Appellant of "being a murderer." Alaniz did not deny giving the police a statement. He

4

additionally identified the signature appearing on the statement as his own signature. However, Alaniz testified that he could not recall what he said to the police.

After Alaniz testified at the voluntariness hearing, Appellant's trial counsel re-urged his prior complaint that the State intended to call Alaniz for the sole purpose of impeaching him with his statement and thereby use it as substantive evidence. At the conclusion of the hearing, the trial court stated as follows:

> All right. We began this hearing with -- the purpose was to determine the voluntariness of the statement. I have heard no evidence that it was not voluntary. So, therefore, I find that it was a voluntary statement.
>
> Now, to talk about the impeachment, I mean, you may call the witness but I am of the opinion you may not put him on and impeach him knowing that he is not going to recognize the statement. I mean, what else? What other purpose could you have?

The prosecutor responded to the trial court's inquiry by stating that Alaniz's testimony "about the gun and about the photographs" should be presented to the jury. The prosecutor additionally asserted that the statement was not hearsay because it was a "notarized statement."[2] The hearing concluded with the trial court ruling that the State would be permitted to call Alaniz as a witness but that it would only be permitted to impeach him with the statement rather than the statement itself being admitted. The trial court additionally granted the defense's request for a running objection as to hearsay and its contention under Rule 403 regarding the State's use of the witness statement.

In his testimony to the jury, Alaniz testified that an officer contacted him in 1992 while he was living in a youth center. The officer questioned him about a

---

[2]We disagree with the prosecutor's assertion that the statement was not hearsay because it was notarized. *See Contreras v. State*, 766 S.W.2d 891, 892 (Tex. App.—San Antonio 1989, no pet.) (A notary's oath does not take a prior inconsistent statement out of the realm of hearsay. Under TEX. R. EVID. 801(e)(1)(A), "statements are non-hearsay only if they were made under oath 'at a trial, hearing, or other proceeding except a grand jury proceeding, or in a deposition.'").

5

crime. Alaniz remembered the officer showing him autopsy photos. He also testified that the signature on the witness statement was his signature. However, he did not recall giving a statement to the police. Alaniz stated that "[i]t has been so far back, I don't recall." Alaniz also testified that he remembered the police officer accusing Appellant of committing the robbery that occurred at the Party House Lounge. However, Alaniz did not remember anything else contained in the statement. The prosecutor explored Alaniz's recollection of making the statement by essentially going through the statement sentence by sentence and asking him, "Do you remember telling the officer that . . . ?" At the conclusion of these questions, the trial court allowed the State to offer Alaniz's written statement into evidence. Alaniz's written statement provided as follows:

> [1][3] My name is James Sonny Alaniz. I go by Sonny. I am 17 years old, and I have lived in Odessa all my life. I am currently a sophomore in High School, and I am attending classes at the Ector County Youth Center until 01-16-92. I will then return to Permian High School where I am permanently enrolled. I do read, write, and understand the English Language.
>
> [2] Today, Detective Corporal H. Q. Thomas came to the Ector County Youth Center to see me. He asked if I would come to the Police Department and talk to him about a case he was working. I told him that I would. He drove me to the Police Department.
>
> [3] At the Police Department, Detective Thomas showed me three photos. I knew the persons in all three photos. One of them is my uncle, Leroy Alaniz, one of them is a guy I know as Paul something; Paul's last name starts with an "E". The third photo was of a female. Her name is Gloria. Her last name also starts with an "E". Gloria is Paul's sister. Gloria is also common-law married to my uncle, Leroy Alaniz.
>
> [4] Detective Thomas told me about a Robbery that occurred at the Party House Lounge on West County Road. He told me that two

---

[3]We have numbered the paragraphs of Alaniz's written statement for later reference.

6

[H]ispanic males entered the lounge on 10-08-91 at about 9:20 p.m. and robbed it. He told me that when they did the robbery, one of the [H]ispanic males had a sawed-off gun believed to be a .22 cal[.] and the other guy had a baseball bat. He also told me that the guy with the baseball bat hit one of the men in the lounge several times in the head, and he later died. He told me that he had gotten information that I was involved in this robbery. He told me that he believed that my uncle, Leroy Alaniz, and the guy I know as Paul are the ones who actually did the robbery. He also told me that he believed that Leroy was the one with the gun and Paul was the one with the baseball bat.

[5] I do not know anything about the robbery at the Party House Lounge. I do know that my uncle, Leroy, does have a gun. The reason I know that Leroy has a gun is because on about 11-09-91 a week before I was picked up on the auto theft and robbery with Paul, Leroy and I went to do a Robbery at the Diamond Shamrock Station on South Crane Street. I was driving a dark blue Chevrolet pick-up that I had stolen about a week before. I have already told Detective Larry Torres about the stolen pick-up, but I did not tell him about the robbery at the Diamond Shamrock. It was about 11:00 p.m. I parked the pick-up down the street, and Leroy got out and walked up to the station. Leroy had a gun. All I could see was that Leroy walked down to the side of the station. I could see him leaning against the building watching. The lady who worked there was outside washing down the front lot with a water hose. Leroy went on around the corner out of my sight. He was out of my sight for a couple minutes. Several cars passing by the station honked, while Leroy was up there. Leroy came jogging across the street by a house and down an open lot. Then he turned down the alley. I drove to where he was headed and picked him up. Leroy told me that the gun back-fired. Leroy told me that he threw the gun down by a trash can. I asked him if he got any money, and he told me that he didn't that he didn't do it. I then drove the pick-up to my Grandmother's House at 1450 S. Sam Houston.

**WITNESS STATEMENT IS CONTINUED ON EXHIBIT "A" ATTACHED HERETO AND BY THIS REFERENCE INCORPORATED HEREIN FOR ALL PURPOSES.**

[Redacted Portion][4]

[6] Detective Thomas asked me to describe the gun that Leroy had and if I knew where the gun was now. The gun that Leroy had is a .22 cal[.] saw-off [sic] rifle. The wooden part on the back of the rifle is broken off. The wood part next [sic] the barrel of the rifle is taped on with two separate wraps of black tape. Leroy showed me how to load the rifle one time. The bullets push down inside the rifle on top of each other. Leroy commented to me one time that the rifle was a 9 shooter.

[7] As far as where the rifle is, Leroy told me, about a week after the Diamond Shamrock Station, he had gone back and gotten the rifle. I do not know where the rifle is now. I got out of the Youth Center on 01-07-92. When I got home to my grandmother's house, I asked where Leroy was. They told me that he had gone to El Paso, Texas. Leroy may have taken the rifle with him. I just don't know. I did hear yesterday that Leroy may be back to Odessa today.

[8] Detective Thomas asked me if Leroy or Paul ever told me anything about the Party House Robbery. I would like to say that neither of them ever told me anything about it. The first I heard of this robbery was today, when Detective Thomas told me about it.

[9] All of what I have said is true and correct to the best of my memory.

[10] I have read the 2 page(s) of this statement, and the facts contained herein are true and correct. This statement was started at 9:55 AM and was finished at 11:21AM, on this date, by Detective Corporal H. Q. Thomas.

As we noted previously, the analysis required by *Hughes* under Rule 403 is required when a party seeks to introduce inadmissible hearsay under the guise of impeachment. *Hughes*, 4 S.W.3d at 4. Alaniz's written statement was admitted into evidence in this case on an impeachment theory, and the parties have briefed this

---

[4]The record indicates that a portion of Alaniz's written statement was redacted because it was not discussed with him during his testimony.

case on whether or not the statement was proper impeachment evidence. However, an appellate court must uphold the trial court's decision if it was correct under any theory of law applicable to the case, even if the trial court did not purport to rely on that theory or the prevailing party did not present that theory to the trial court. *See State v. Esparza*, 413 S.W.3d 81, 85 (Tex. Crim. App. 2013); *Vennus v. State*, 282 S.W.3d 70, 74 (Tex. Crim. App. 2009); *Jones v. State*, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

Alaniz's statement contained two critical pieces of information: (1) that Appellant possessed a .22 caliber sawed-off rifle within approximately one month after the commission of the charged offense and (2) that Alaniz participated in another robbery with Appellant at a Diamond Shamrock station using this rifle.[5] This information is set out in the fifth, sixth, and seventh paragraphs of Alaniz's statement. We conclude that these three paragraphs were admissible under an exception to the hearsay rule for statements against interest. *See* TEX. R. EVID. 803(24).[6]

Hearsay is a statement, other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d); *see Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). As a general rule, hearsay evidence is inadmissible unless it falls within one of the many exceptions. *See* TEX. R. EVID. 802; *Willover*, 70 S.W.3d at 845. The fifth, sixth, and seventh paragraphs detail Alaniz's account of committing a robbery with Appellant and Appellant's use of a sawed-off .22 caliber rifle to do so. Rule 803(24) provides an

---

[5]On appeal, Appellant does not challenge the admission of evidence of the other robbery under TEX. R. EVID. 404(b).

[6]Presiding Judge Keller recognized in her dissenting opinion in *Hughes* that the "improper impeachment" analysis under Rule 403 would not be required if the statements did not constitute inadmissible hearsay. *Hughes*, 4 S.W.3d at 7 (Keller, J., dissenting).

9

exception to the hearsay rule for the admission of statements made against the declarant's interest. This exception permits the admission of:

A statement that:

(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability or to make the declarant an object of hatred, ridicule, or disgrace; and

(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

The rationale behind admitting these types of statements "stems from the commonsense notion that people ordinarily do not say things that are damaging to themselves unless they believe they are true." *Walter v. State*, 267 S.W.3d 883, 890 (Tex. Crim. App. 2008). "[A] reasonable person would not normally claim that he committed a crime, unless it were true." *Id.* Rule 803(24) sets out a two-step foundation requirement for admissibility of hearsay statements. *Id.* The trial court must first determine whether the statement, considering all of the circumstances, subjects the declarant to criminal liability and whether the declarant realized this when he made the statement. *Id.* at 890–91. The trial court must then determine whether sufficient corroborating circumstances exist that clearly indicate the trustworthiness of the statement. *Id.* at 891.

We conclude that the trial court would not have abused its discretion had it determined that this portion of Alaniz's statement was a statement against his interest under Rule 803(24). The fifth paragraph expressly states, "[Appellant] and I went to do a Robbery at the Diamond Shamrock Station on South Crane Street." Alaniz then detailed both his conduct and the conduct of Appellant during the robbery.

10

Alaniz stated that he drove Appellant to the station, waited on him, and then drove him away from the station. This account would have subjected Alaniz to criminal liability, and Alaniz, in all likelihood, would have realized this fact given that he was making the statement to a police officer while in custody for another offense. There are also significant factors suggesting that the statement was trustworthy given the proximity in time to the event described in the statement, the nature of the account, Alaniz's testimony that it bore his signature, and the fact that the statement was notarized. Furthermore, the notarization of Alaniz's written statement made it self-authenticated. *See* TEX. R. EVID. 902(8).

Having determined that the critical portions of Alaniz's written statement did not constitute inadmissible hearsay, we need not consider whether these portions constituted improper impeachment evidence. These portions of the statement were admissible in their own right as substantive evidence.

The remaining portions of Alaniz's statement were inconsequential. The first paragraph only contained biographical information about Alaniz. The second paragraph detailed that Alaniz agreed to accompany the police officer to visit about the case. The third paragraph detailed Alaniz's identification of three people in photographs presented to him by the police officer for identification. The fourth paragraph consisted of the police officer's description of the robbery that occurred at the Party House Lounge. As such, it was cumulative of the other evidence offered in the case. The eighth paragraph consisted of a denial of any knowledge by Alaniz about the robbery at the Party House Lounge. In summary, the admission of the other portions of Alaniz's statement did not result in reversible error. In this regard, the violation of an evidentiary rule that results in the erroneous admission of evidence constitutes nonconstitutional error. *Geuder v. State*, 142 S.W.3d 372, 376 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). As nonconstitutional error, we must review the erroneous admission under Rule 44.2(b) of the Texas Rules of

Appellate Procedure. TEX. R. APP. P. 44.2(b); *see Campos v. State*, 317 S.W.3d 768, 779 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (the erroneous admission of a hearsay statement constitutes nonconstitutional error). When an appellate court applies Rule 44.2(b), it must disregard nonconstitutional error unless it affects the appellant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). An appellate court should not overturn a criminal conviction for nonconstitutional error "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Id.* (emphasis omitted) (quoting *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001)) (internal quotation mark omitted). We have fair assurance that the other portions of Alaniz's written statement did not influence the jury. We overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
JUSTICE


July 9, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

12