

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00059-CR

_____

ANTHONY WHITE JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1512359D

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellant Anthony White Jr. was charged with assault causing bodily injury to a member of his family or household or person with whom he had a dating relationship enhanced by a prior conviction for a similar offense, a third-degree felony. *See* Tex. Penal Code Ann. § 22.01(b)(2)(A). After White pleaded guilty to the charge, the trial court deferred adjudicating him guilty and placed him on community supervision for five years. The State later filed a petition to proceed to adjudication based on White's violation of the terms and conditions of his community supervision, and following a hearing, the trial court adjudicated White guilty and sentenced him to ten years' confinement. On appeal, White brings one issue, arguing that the trial court abused its discretion by admitting two exhibits—State's Exhibit 4, a police officer's body camera video, and State's Exhibit 11, an audio of a 911 call—at the hearing on the State's petition to proceed to adjudication. We will affirm.

### II. BACKGROUND

In 2017, following White's guilty plea, the trial court deferred adjudicating him and placed him on community supervision. The terms of White's community supervision required that he "[c]ommit no offense against the laws of this State . . . ."

In 2020, the State filed a petition to proceed to adjudication based on a domestic-violence incident occurring on May 11, 2020, between White and his

girlfriend, B.G.[1]  The State alleged that White had violated the terms and conditions of his community supervision by: (1) committing the offense of assault causing bodily injury against B.G., a person with whom White had a dating relationship; (2) interfering with B.G.'s emergency call to authorities; and (3) unlawfully restraining B.G.

Prior to the hearing on the State's petition, B.G. signed two "Affidavit[s] of Non-Prosecution," indicating that she did not want to testify against White and that she wanted all charges against him to be dismissed.  In one of the affidavits, B.G. averred that she had been intoxicated on May 11, that White "never put his hands on [her]" during the May 11 incident, that he had not interfered with her emergency call to authorities, and that she had not been restrained by him.

At the hearing on the State's petition to proceed to adjudication, White pleaded not true to the paragraphs in the State's petition alleging that he had violated the terms and conditions of his community supervision.  The State called four witnesses at the hearing: (1) Doug Jones, an employee of the Tarrant County Community Supervision and Corrections Department, who testified regarding White being placed on deferred adjudication in 2017 and regarding the terms and conditions of White's community supervision; (2) Fort Worth Police Department Officer Claudia Alfaro

---

[1]We will refer to the complainant by her initials.  *See Bakare v. State*, No. 02-19-00447-CR, 2021 WL 2460857, at *1 n.1 (Tex. App.—Fort Worth June 17, 2021, no pet.) (mem. op., not designated for publication) (referring to complainant by her initials in an appeal of a conviction for assault against a family member).

who testified regarding her response to the May 11 incident and her interactions with B.G.; (3) Fort Worth Police Department Officer Trentan Bledsoe who testified regarding his response to the May 11 incident and his interactions with White and B.G.; and (4) B.G. who testified regarding the May 11 incident and her interactions with White, Officer Alfaro, and Officer Bledsoe.

Officer Alfaro testified that on May 11, she responded to a domestic-disturbance call at B.G.'s apartment. When Officer Alfaro arrived at the scene, she met with B.G. inside the apartment while Officer Bledsoe spoke to White outside the apartment.[2] Officer Alfaro testified that B.G. was "very excited" and "was crying the whole time that [Officer Alfaro] spoke with her." The State asked Officer Alfaro to testify regarding what B.G. had told her, and White objected based on hearsay, Texas Rule of Evidence 403, and *Hughes v. State*, 4 S.W.3d 1 (Tex. Crim. App. 1999)—essentially arguing that the State was "trying to put on impeachment evidence where they know that their complaining witness has recanted." The State responded to White's objection by arguing that it was not offering the evidence for impeachment purposes and that the evidence was allowed to come in under the excited utterance exception to the hearsay rule. The trial court overruled White's objection, noting,

> Well, in [*Hughes*], the State called a witness to recant them with otherwise inadmissible evidence—I mean—or recant the witness to impeach them with otherwise inadmissible evidence.

_____

[2]Three children were also inside the apartment—B.G.'s two daughters and White's son.

But, in this case, they did not call the injured party, and this evidence is an excited utterance so it's not otherwise inadmissible. I mean, it would be—if she just said this, whatever she's about to—I'm about to hear—if she just said that sitting calmly in a—with a police officer, it wouldn't be admissible because it would be hearsay.

But if she says it with excited utterance, then it is admissible and you can't—but nobody's called the injured party. And even if [the "Affidavit[s] of Non-Prosecution"] may conclusively prove that she's going to recant, they haven't called her to get into something that's inadmissible, so I'm going to overrule your objection.

White requested, and the trial court granted, a running objection "for all statements that the officer will testify as to that were made by [B.G.]."

Officer Alfaro then testified that B.G. told her that White "had hit [B.G.] multiple times, and he had also hit [B.G.] with a shirt, [and] held [B.G.] down on the bed." The State offered into evidence video from Officer Alfaro's body camera—State's Exhibit 3—and White "renew[ed] [his] previous objections" and also objected that the exhibit violated *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004). The trial court "sustain[ed] the *Crawford* objection until [the State laid its] predicate through a witness." State's Exhibit 3—the video from Officer Alfaro's body camera—was never again offered into evidence.

Following Officer Alfaro's testimony, the State called Officer Bledsoe to the stand. Officer Bledsoe testified that when he arrived at B.G.'s apartment, he knocked on the door and could hear a disturbance coming from inside. When the door was opened, he saw B.G. crying and heard her say, "He hit me." White then renewed his

objection under Rule 403 and *Hughes*, and the trial court stated that it would consider White's running objection as running "the whole time."[3]  Officer Bledsoe then testified that during the May 11 incident, B.G. was "in distress" and that she "was crying, very emotional, [and] seemed very disturbed."  Officer Bledsoe testified that he had White step outside of the apartment to speak with him while B.G. remained inside.  White explained to him that White and B.G. had been drinking and were intoxicated, that there had been a "verbal altercation" in the apartment, that B.G. had become physical with White, and that White had grabbed B.G. and pinned her down on the bed.

The State then offered into evidence video from Officer Bledsoe's body camera—State's Exhibit 4—and explained that the exhibit contained two parts, one showing Officer Bledsoe knocking on the door and his subsequent conversation with White and the other showing his conversation with B.G. in the apartment following White's arrest.  White objected to the admission of State's Exhibit 4, stating "[s]ame objections, Judge."  The trial court overruled the objections as to the first part of State's Exhibit 4, and the first part of the video was published.[4]

---

[3]White also objected based on *Klein v. State*, 191 S.W.3d 766 (Tex. App.—Fort Worth 2006), *rev'd*, 273 S.W.3d 297 (Tex. Crim. App. 2008).  White does not make any argument regarding *Klein* on appeal.

[4]At that point in the hearing, the trial court did not make a ruling as to White's objections to the second part of State's Exhibit 4.

6

In the first part of State's Exhibit 4, Officer Bledsoe is seen approaching the apartment and knocking on the door. White is seen answering the door, and B.G. is heard in the background saying, "he f****** hit me," and "he didn't want me to call you guys." The video then shows White step out of the apartment with Officer Bledsoe, and White then recounts his side of the May 11 incident. White states that he and B.G. had drunk alcohol earlier in the day, that B.G. started arguing with him when they got back to the apartment, that B.G. attacked him, and that he only touched B.G. when he "pushed her off" of him. The video then shows Officer Bledsoe talking with Officer Alfaro. Following the conversation between Officers Bledsoe and Alfaro, the video shows Officer Bledsoe place White under arrest.[5]

Officer Bledsoe testified that he spoke with B.G. following White's arrest and that he took photographs of scratches and marks on and around her neck. The State then offered six photographs depicting several small scratches on B.G.'s neck, and the trial court admitted the photographs over White's objection.[6] Officer Bledsoe testified that B.G. told him that she and White had had a "verbal altercation"; that White had struck her with his shirt; that she had told White that she would call 911; that White had become angry and struck her with his closed fist; that she had fallen

---

[5]There is no audio of the conversation between Officer Bledsoe and Officer Alfaro. Officer Bledsoe testified that he "cut [his] mic" so that he could "have a private conversation with [his] partner."

[6]White objected to the admission of the photographs, again citing Rule 403, *Hughes*, and *Klein*.

on the bed; that White had mounted her on the bed and struck her with both of his hands; that she had gone to the balcony and yelled, "Someone call 911"; that White had grabbed her by the hair and pulled her back into the bedroom where he threw her on the bed and began striking her again; that she had grabbed a phone to call the police; that White had taken the phone away from her while she was dialing; and that she had grabbed another phone and went into a bathroom where she called 911.

Later during Officer Bledsoe's testimony, the State offered into evidence the second part of State's Exhibit 4. White objected to the admission of the second part of State's Exhibit 4, stating "[t]he same objections, Judge."[7] The trial court overruled White's objections, and a portion of the second part of State's Exhibit 4 was published. In the published portion of the second part of State's Exhibit 4, Officer Bledsoe is seen entering the apartment and speaking with a visibly distraught B.G., where she recounted her side of the May 11 incident. In the video, B.G. recounts that she and White had been arguing; that White hit her in the face with a shirt; that White hit her in the face with his hands; that she defended herself by hitting White back; that she told White that she would call the police; that White told her, "I can't deal with no b**** that calls the cops"; that White took her phone while she was trying to call the police; that she went outside and yelled for help but that White grabbed her by the

---

[7]White also objected under *Crawford*, arguing that the State was "trying to get in a statement from a child witness that's not present, not available." The State then mentioned that it could cut the video off before the child witness made the statement.

hair and dragged her inside; that White started hitting her again; that she tried to run away from White but that he threw her on a bed and started choking her; and that she grabbed a different phone and went into a restroom to call 911.

The State later called B.G. to testify. B.G. testified that she had called 911 during the May 11 incident. The State offered to admit into evidence audio of the 911 call—State's Exhibit 11. White objected to State's Exhibit 11, renewing his running objection and arguing that the exhibit was "more prejudicial than probative" and arguing that "the State is attempting to impeach this witness with a statement—a prior recorded statement and knowing that she has recanted her statements to the police officers that night." The trial court overruled White's objection and admitted the audio of the 911 call. During the call, B.G. can be heard telling the 911 operator her address, the operator then inquired about what was going on, B.G. responded with something unintelligible, the operator again inquired about what was going on, B.G. again responded with something unintelligible, the operator again inquired about what was going on, and the audio ended.

Following the admission of the audio of the 911 call, B.G. testified about what had occurred during the May 11 incident. B.G. explained that she was intoxicated on May 11 and was arguing with White because she had heard stories that White had been cheating on her. B.G. averred that she had called 911 because she "was just intoxicated," and she "wanted to get back at [White]." B.G. testified that she remembered telling Officers Alfaro and Bledsoe that White had hit her with a shirt,

9

had hit her in the face, had taken her phone when she was going to call the police, had interfered with her going outside to yell for help, and had choked her, but stated that White had not done those things after all. More specifically, B.G. testified that White did not hit her, that he did not take her phone from her or interfere with her ability to call 911, and that he did not prevent her from going outside or restrain her against her will. B.G. also explained that the scratches found on her neck were caused by herself and not White, explaining that she had suffered "a little anxiety attack" and started scratching herself. B.G. also testified that she was no longer dating White at the time of the hearing.

Following argument from counsel, the trial court found that paragraphs 1 and 2 of the State's petition to proceed to adjudication were true (the paragraphs alleging that White had committed the offense of assault causing bodily injury against a person with whom White had a dating relationship and alleging that White had interfered with B.G.'s emergency call to authorities), and the trial court found that paragraph 3 of the State's petition was not true (the paragraph alleging that White had unlawfully restrained B.G.). Based on those findings, the trial court found that White had violated the terms and conditions of his probation and found him guilty of the 2017 charge of assault causing bodily injury to a member of his family or household or person with whom he had a dating relationship with a prior conviction. The trial court sentenced White to ten years' confinement. This appeal followed.

10

## III. DISCUSSION

In his sole issue on appeal, White argues that the trial court abused its discretion by admitting State's Exhibits 4 and 11. Pointing to *Hughes* and Rule 403, White argues that the trial court abused its discretion by admitting those exhibits "because the State offered th[o]se exhibits to impeach B.G.'s testimony when the State called B.G. knowing that she would recant." The State counters by arguing that "the complained[-]of exhibits[8] were admitted as 'excited utterances,' *not* as 'impeachment' evidence." Thus, the State contends that the complained-of exhibits were otherwise admissible. Pointing to the Confrontation Clause of the Sixth Amendment, White counters this argument by contending that B.G.'s statements contained in Exhibits 4 and 11 "are not otherwise admissible as White's right of confrontation prohibited their admission."

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018);

---

[8]In its brief, the State mistakenly refers to the complained-of exhibits as the "evidence from the two body cameras worn by the police officers"—presumably referring to State's Exhibits 3 and 4. But only one of the complained-of exhibits, State's Exhibit 4, pertains to video from a body camera (Officer Bledsoe's body camera); the other complained-of exhibit, State's Exhibit 11, pertains to audio from B.G.'s 911 call. In its brief, the State also mistakenly contends that the "[complained-of] exhibits were introduced *prior to* [B.G.'s] testimony." While State's Exhibit 4 was introduced prior to B.G.'s testimony, State's Exhibit 11 was introduced during B.G.'s testimony.

*Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). Under this standard, we will uphold the trial court's decision as long as it is within the zone of reasonable disagreement. *Beham*, 559 S.W.3d at 478; *Johnson*, 490 S.W.3d at 908. If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed regardless of the reason for the trial court's ruling. *Johnson*, 490 S.W.3d at 908; *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

## B. Applicable Law

Several tenets of law meet at the crossroads of this appeal: the general rule prohibiting hearsay, the excited utterance exception to the hearsay rule, Texas Rule of Evidence 403, the holding in *Hughes* regarding how to apply Rule 403 when the State knows that its own witness will testify unfavorably, and the Confrontation Clause.

Hearsay is an out-of-court statement that a party offers to prove the truth of the matter asserted within the statement. Tex. R. Evid. 801(d). Hearsay is generally inadmissible unless it falls within one of the enumerated exceptions. Tex. R. Evid. 802 (providing general rule against hearsay), 803 (providing exceptions applicable regardless of whether the declarant is available as a witness), 804 (providing exceptions applicable when the declarant is unavailable as a witness).

An "excited utterance" is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Tex. R. Evid. 803(2). Such excited utterances are not subject to the hearsay rule, irrespective of whether the declarant is available as a witness. Tex. R. Evid. 803. In

determining whether a hearsay statement is admissible as an excited utterance, a court considers whether

> (1) the "exciting event" [is] startling enough to evoke a truly *spontaneous* reaction from the declarant; (2) the reaction to the startling event [is] quick enough to avoid the possibility of fabrication; and (3) the resulting statement [is] sufficiently "related to" the startling event, to ensure the reliability and trustworthiness of that statement.

*McCarty v. State*, 257 S.W.3d 238, 241 (Tex. Crim. App. 2008).

In determining whether a hearsay statement is admissible as an excited utterance, a court may also consider the time elapsed and whether the statement was in response to a question. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Davis v. State*, 268 S.W.3d 683, 703 (Tex. App.—Fort Worth 2008, pet. ref'd). However, it is not dispositive that the statement is an answer to a question or that it was separated by a period of time from the startling event; these are simply factors to consider in determining whether the statement is admissible under the excited utterance hearsay exception. *Zuliani*, 97 S.W.3d at 596; *Davis*, 268 S.W.3d at 703. The critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" at the time of the statement. *Zuliani*, 97 S.W.3d at 596.

Texas Rule of Evidence 403 provides that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. In *Hughes*,

13

the Texas Court of Criminal Appeals addressed the interplay between Rule 403 and situations where the State knows that its own witness will testify unfavorably. 4 S.W.3d at 5. In that case, the defendant was charged with indecency with a child by contact. *Id.* at 2. The State called the child's mother knowing that she would offer no favorable testimony in support of its case, as demonstrated by the mother's unfavorable testimony at two prior hearings. *Id.* at 4–5. The State then called a CPS caseworker who impeached the mother's testimony with the mother's prior inconsistent statements. *Id.* at 4. The Court of Criminal Appeals held that the "State's knowledge that its own witness will testify unfavorably is a factor the trial court must consider when determining whether the evidence is admissible under Rule 403." *Id.* at 5. In analyzing whether the evidence was admissible under Rule 403, the Court of Criminal Appeals noted that the evidence was not otherwise admissible under any hearsay exception claimed by the State. *Id.* at 6. The Court of Criminal Appeals ultimately held that the trial court's allowing the State to call a witness under the guise of impeachment to get in otherwise highly prejudicial, inadmissible evidence was improper under the circumstances and erroneous under Rule 403:

> [A]n examination of the record reveals the State elicited no favorable
> testimony from [the mother]. The lack of favorable testimony suggests
> the State was attempting to use [the mother's] prior inconsistent
> statements under the guise of impeachment for the primary purpose of
> placing before the jury evidence which was not otherwise admissible.
> Consequently, we conclude the State had little, if any, legitimate purpose
> in admitting [the mother's] prior inconsistent statements to impeach her

14

testimony. Due to the highly prejudicial nature of this evidence[,] we conclude any probative value it may have had was substantially outweighed by its prejudicial effect.

*Id.* at 7.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. The Confrontation Clause protects a defendant's right to physically face the witnesses who testify against him as well as his right to conduct cross-examination. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S. Ct. 989, 998 (1987); *Macias v. State*, 539 S.W.3d 410, 421 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). Whether a statement is admissible under the Rules of Evidence and whether that statement is admissible under the Confrontation Clause are separate questions. *Crawford*, 541 U.S. at 50–51, 124 S. Ct. at 1363–64; *Walker v. State*, 406 S.W.3d 590, 596 (Tex. App.—Eastland 2013, pet. ref'd). "Thus, even when a statement offered against a defendant is admissible under evidentiary rules, the statement may implicate the Sixth Amendment's Confrontation Clause." *Walker*, 406 S.W.3d at 596.

## C. Analysis

We will assume, without deciding, that White has preserved the arguments he now makes on appeal regarding the admission of State's Exhibits 4 and 11. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (discussing specificity required at the trial-court level to preserve arguments on appeal).

15

**1. The admission of the first part of State's Exhibit 4**

The State argues that the trial court did not abuse its discretion by admitting the complained-of evidence because it was admissible under the excited utterance exception to the hearsay rule. We agree as it relates to the first part of State's Exhibit 4.

The first part of State's Exhibit 4 depicts Officer Bledsoe arriving at B.G.'s apartment in response to her 911 call. The only statements made by B.G. in the first part of State's Exhibit 4 occur when Officer Bledsoe arrives at B.G.'s apartment, and an agitated B.G. is heard saying that White had hit her and that White did not want her to call the police. Those statements[9] reasonably fall within the excited utterance exception to the hearsay rule given their proximity to the assault, B.G. still being under the stress or excitement of the assault, and because they were made without solicitation upon Officer Bledsoe arriving at the scene. *See McCarty*, 257 S.W.3d at 241; *Davis*, 268 S.W.3d at 703. Thus, in contrast to *Hughes*, here the complained-of evidence was otherwise admissible under an exception to the hearsay rule. *See Hughes*, 4 S.W.3d at 6.

White argues that the complained-of exhibits were not otherwise admissible because they allegedly violated White's rights under the Confrontation Clause. The

---

[9]To the extent that White complains about other statements contained in the first part of State's Exhibit 4, namely his statements to Officer Bledsoe, those statements would fall under the admission by a party opponent exception to the hearsay rule. *See* Tex. R. Evid. 801(e)(2).

Confrontation Clause, however, "applies only to criminal prosecutions, and a probation revocation, whether it follows 'regular' probation or deferred adjudication probation, is not a stage of criminal prosecutions." *Olabode v. State*, 575 S.W.3d 878, 881 (Tex. App.—Dallas 2019, pet. ref'd). As stated by the Dallas Court of Appeals in *Gutierrez v. State*,

> Deferred adjudication probation differs from regular probation in that it permits a defendant who pleads guilty to an offense and who successfully completes probation to avoid "conviction." However, the issue of appellant's guilt for the offense is determined in the initial plea proceedings, and the only issue to be determined in the revocation proceedings is whether to proceed with an adjudication of guilt. We conclude because appellant's guilt was already determined in the prior plea proceedings, the revocation proceedings were not a phase of "criminal prosecution" for purposes of the Sixth Amendment.

No. 05-11-01380-CR, 2013 WL 3533549, at *2 (Tex. App.—Dallas July 12, 2013, pet. ref'd) (mem. op., not designated for publication) (citation omitted); *see also Pickins v. State*, No. 02-17-00050-CR, 2018 WL 3468359, at *4 (Tex. App.—Fort Worth July 19, 2018, no pet.) (mem. op., not designated for publication) ("[W]e conclude that a community supervision revocation proceeding is not a stage of a criminal prosecution. Accordingly, the Confrontation Clause is inapplicable in those proceedings . . . .").

Thus, because the first part of State's Exhibit 4 was otherwise admissible, the trial court did not abuse its discretion by admitting it. And even if the trial court had abused its discretion by admitting it, such error was harmless given that there was ample other evidence before the trial court (evidence of which White does not complain of on appeal) proving the same facts. *See Merrit v. State*, 529 S.W.3d 549, 557

(Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (holding error in admission of evidence was harmless where similar testimony was developed and offered through two other witnesses); *Matz v. State*, 21 S.W.3d 911, 912–13 (Tex. App.—Fort Worth 2000, pet. ref'd) (holding error in admission of complainant's videotaped statement regarding assault was harmless because complainant's admissible live testimony established the same facts). Here, Officer Alfaro testified that B.G. had told her that White had hit her; Officer Bledsoe testified that B.G. had told him that White had hit her and that White had taken a phone away from her when she was dialing 911; and B.G. testified that she had told Officers Alfaro and Bledsoe that White had hit her and had taken her phone when she was dialing 911. Because that evidence is cumulative of the statements made by B.G. in the first part of State's Exhibit 4, even if the trial court abused its discretion by admitting that part, we must disregard the error because it could not have affected White's substantial rights. *See* Tex. R. App. P. 44.2(b).

### 2. The admission of the second part of State's Exhibit 4

As to the second part of State's Exhibit 4, we have less confidence that it was otherwise admissible under the excited utterance exception to the hearsay rule given that the statements made by B.G. in the second part of State's Exhibit 4 occurred following White's arrest and were made in response to questions by Officer Bledsoe. *See McCarty*, 257 S.W.3d at 241; *Davis*, 268 S.W.3d at 703. But, assuming without deciding that the trial court abused its discretion by admitting the second part of

18

State's Exhibit 4, such error was harmless. *See Merrit*, 529 S.W.3d at 557; *Matz*, 21 S.W.3d at 912–13. In this regard, Officer Bledsoe testified about what B.G. had told him that night in the apartment, and White does not complain on appeal about the admission of Officer Bledsoe's testimony.

Specifically, and as recited above, Officer Bledsoe testified that B.G. told him that she and White had had a "verbal altercation"; that White had struck her with his shirt; that she had told White that she would call 911; that White had become angry and struck her with his closed fist; that she had fallen on the bed; that White had mounted her on the bed and struck her with both of his hands; that she had gone to the balcony and yelled, "Someone call 911"; that White had grabbed her by the hair and pulled her back into the bedroom where he threw her on the bed and began striking her again; that she had grabbed a phone to call the police; that White had taken the phone away from her while she was dialing; and that she had grabbed another phone and had gone into a bathroom where she called 911. Moreover, B.G. testified that she remembered telling Officers Alfaro and Bledsoe that White had hit her with a shirt, had hit her in the face, had taken her phone when she was going to call the police, had interfered with her going outside to yell for help, and had choked her. Because that evidence is cumulative of the statements made by B.G. on the second part of State's Exhibit 4, even if the trial court abused its discretion by admitting that part, we must disregard the error because it could not have affected White's substantial rights. *See* Tex. R. App. P. 44.2(b).

19

### 3. The admission of State's Exhibit 11

As it relates to the admission of State's Exhibit 11—the audio of the 911 call—we hold that B.G.'s statements contained within the call reasonably fall within the excited utterance exception to the hearsay rule given that B.G. sounds upset and shaken during the call and given the testimony indicating that the call was made in close proximity to the assault.[10] *See McCarty*, 257 S.W.3d at 241; *Dixon v. State*, 358 S.W.3d 250, 261 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (concluding that the trial court did not abuse its discretion by determining that statements in 911 call were an excited utterance where caller sounded "very upset, scared, and excited"). Thus, the trial court did not abuse its discretion by admitting State's Exhibit 11.

And even if the trial court had abused its discretion by admitting it, such error was harmless. In this regard, State's Exhibit 11, which is just over one minute long, contains audio of B.G. telling the 911 operator her address, the operator repeatedly inquiring as to what was going on, and B.G. saying something unintelligible to the operator's inquiries. White makes no argument as to how specifically the admission of the 911 call harmed him, and we do not see how it could have harmed him given

---

[10]White does not suggest in his brief that the complained-of exhibits do not meet the excited utterance exception to the hearsay rule; rather, White's argument that the complained-of exhibits were not otherwise admissible focuses on his contention that "White's right of confrontation prohibited their admission." But, as stated earlier, the Confrontation Clause "applies only to criminal prosecutions, and a probation revocation, whether it follows 'regular' probation or deferred adjudication probation, is not a stage of criminal prosecutions." *Olabode*, 575 S.W.3d at 881; *see Guitierrez*, 2013 WL 3533549, at *2.

the relative lack of substance of the call, B.G.'s testimony that she had made the call, and other testimony (of which White does not complain on appeal) regarding the assault and the location of the assault. Thus, even if the trial court abused its discretion by admitting State's Exhibit 11, we must disregard the error because it could not have affected White's substantial rights. *See* Tex. R. App. P. 44.2(b).

Having addressed both parts of State's Exhibit 4 and State's Exhibit 11, we overrule White's sole issue.

## IV. CONCLUSION

Having overruled White's sole issue, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 3, 2022